IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIBERTY DIALYSIS - HAWAII LLC,<br><br>Plaintiff,<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., and KAISER FOUNDATION HOSPITALS,<br><br>Defendants. | CIV. NO. 17-00318 JMS-RLP<br><br>ORDER DENYING DEFENDANTS KAISER FOUNDATION HEALTH PLAN, INC. AND KAISER FOUNDATION HOSPITALS' MOTION TO DISMISS COMPLAINT, ECF NO. 9 |

**ORDER DENYING DEFENDANTS KAISER FOUNDATION HEALTH PLAN INC. AND KAISER FOUNDATION HOSPITALS' MOTION TO DISMISS COMPLAINT, ECF NO. 9**

**I. INTRODUCTION**

Defendants Kaiser Foundation Health Plan, Inc. ("KFHP" or the "Plan") and Kaiser Foundation Hospitals ("KFH") (collectively "Kaiser Foundation") move to dismiss the complaint filed against them by Plaintiff, Liberty Dialysis-Hawaii LLC ("Liberty"). ECF No. 9. Kaiser Foundation contends that this court lacks subject-matter jurisdiction because Liberty's claims arise under the Medicare Act and Liberty has neither presented its claims to the Secretary of the Department of Health and Human Services nor exhausted administrative remedies under the Act. Id. The court finds that the claims do not arise under the Medicare Act and therefore DENIES the motion to dismiss.

## II. BACKGROUND

**A.     Basic Statutory Framework**

Medicare Advantage, which was established in 1997 as Medicare+Choice under Part C of the Medicare Act,[1] is an alternative to the original fee-for-service option that is included in Parts A and B of the Act (referred to as "traditional" or "original" Medicare). 42 U.S.C. § 1395w-21(a). Under the Medicare Advantage option, Medicare beneficiaries elect to receive Medicare benefits through a plan offered by a Medicare Advantage Organization ("MAO"), generally a private insurer, that contracts with the Centers for Medicare and Medicaid ("CMS") to administer Medicare benefits to plan enrollees. 42 U.S.C. § 1395w-21, 27. The MAO assumes the risk of providing benefits to its enrollees in exchange for fixed payments from CMS that are based on the number of beneficiaries enrolled in the plan or plans. *See* 42 U.S.C. § 395w-23, -25(b); 42 CFR § 422.208(a).

The MAO may select third-party providers to treat its enrollees, and these providers may or may not have contractual relationships with the MAO. *See* 42 U.S.C. § 395w-22(d)(1), -25(b)(4). Those that do are called "contract providers," and the MAO pays them at contractually agreed-upon rates. "The

---

[1] The Medicare Prescription Drug, Improvement, and Modification Act of 2003, Pub. L. No. 108-173, § 201, 117 Stat. 2066 (2003), changed the name to Medicare Advantage.

Medicare Act permits these types of contracts, and provides very few limitations on how they can be drafted." *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cen. Ins. Co.*, 2017 WL 3567819 at *2 (11th Cir. Aug. 18, 2017) (citing as an example 42 C.F.R. § 422.520(b), requiring contracts between MAOs and providers to contain a prompt-payment provision); *RenCare, Ltd. v Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 559 (2004) (same). But an MAO must pay providers with whom it has no contract ("noncontract providers") the same rates set by the Medicare Act and its regulations. 42 U.S.C. § 1395w-22(a)(2)(A); 42 C.F.R. § 422.214(a).

**B.     Factual Background**

KHFP is a Medicare Advantage Organization. Compl. ¶ 8, ECF No. 1-2; Notice of Removal ¶ 5, ECF No. 1. Under the terms of a 2007 letter of agreement (the "Agreement") between Liberty and KFH, Liberty agreed to provide outpatient renal dialysis and related services to KFHP members, including the Plan's Medicare Advantage members. Compl. ¶ 7. KFH agreed to pay Liberty for such treatment and services according to a rate table appended to the Agreement. Id. ¶¶ 7-9. According to Liberty, beginning in January 2011, Kaiser Foundation stopped paying Liberty on time and at the contracted rates for services provided to KFHP's members, including, but not limited to, its Medicare Advantage plan members. Compl. ¶ 17. It reduced its payments for some services, stopped paying

altogether for others, and extended its payment cycle. Compl. ¶ 17. Liberty contends that Kaiser Foundation's actions coincided with changes to the Medicare reimbursement structure that have no bearing on its contract with KFH. Compl. ¶¶ 18-19.

C. **Procedural Background**

Liberty filed a state-court action asserting claims for breach of contract, accounting, and declaratory judgment. Compl. ¶¶ 41-56. Kaiser Foundation removed the case to federal court. Notice of Removal, ECF No. 1. On July 20, 2017, Kaiser filed this Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction. ECF No. 9. Liberty filed an Opposition on September 18, 2017, ECF No. 22, and Kaiser Foundation filed its Reply on September 11, 2017. ECF No. 24. A hearing was held on September 25, 2017.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction. The moving party "should prevail [on a Rule 12(b)(1) motion to dismiss] only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." C*asumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation marks omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

A Rule 12(b)(1) challenge may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack such as the one here, the court may dismiss a complaint when the allegations of and documents attached to the complaint are insufficient to confer subject-matter jurisdiction. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). When determining whether subject-matter jurisdiction exists, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

## IV. <u>ANALYSIS</u>

Kaiser Foundation contends that the majority of Liberty's claims "arise under" the Medicare Act and that Liberty was therefore required to exhaust administrative remedies before seeking judicial review. Mot. at 2. Because Liberty failed to do so, Kaiser Foundation argues that this court lacks subject-matter jurisdiction over Liberty's claims and must dismiss this suit. Id. The court disagrees, however, and finds that the dispute between Liberty and Kaiser Foundation is a private contract dispute not "arising under" the Medicare Act.

The Medicare Act incorporates the exhaustion requirement in § 405(h) of the Social Security Act. 42 U.S.C. § 1395ii. In a suit involving traditional Medicare, the Supreme Court held that "[j]udicial review of claims

5

arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act." *Heckler v. Ringer*, 466 U.S. 602, 605 (1984) (internal footnote omitted); *see Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1111 (9th Cir. 2003) ("Jurisdiction over cases 'arising under' Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review."). "Federal regulations provide for a separate MAO administrative review process for MAO benefits determinations (or 'organization determinations')." *Prime Healthcare Huntington Beach v. SCAN Health Plan, LLC* ("*SCAN Health*"), 210 F. Supp. 3d 1225, 1229 (C.D. Cal. 2016) (citing various provisions in 42 C.F.R. Ch IV, Subch. B, Pt. 422). But "even where suit is brought against an MAO, § 405(h) limits [the court's] jurisdiction over unexhausted claims to those that do not 'arise under' Medicare." *Id*. at 1231 (relying on *Kaiser*, and *Uhm v. Humana Inc*., 620 F.3d 1134 (2010)).

The Supreme Court has interpreted the phrase "arising under" broadly. *Heckler*, 466 U.S. at 615. A claim arises under the Medicare Act when "both the standing and the substantive basis for the presentation" of the claim is the Medicare Act, or when a claim is "inextricably intertwined" with a claim for Medicare benefits. *Id*. at 614, 615, 624; *see also Uhm*, 620 F.3d at 1141 (same). Thus, a "claim may arise under the Medicare Act even though . . . it also arises

6

under some other law." *Kaiser*, 347 F.3d at 1114. And claims expressly based on any other law that are in essence "[c]leverly concealed claims for benefits" still arise under the Medicare Act. *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098, 1109 (11th Cir. 1998).

In the context of traditional Medicare, the Ninth Circuit determined that "the appropriateness of [a defendant's] decisions with respect to the compensation [a provider] should have received for the services it provided to Medicare beneficiaries" was "inextricably intertwined" with claims for Medicare reimbursement. *Kaiser*, 347 F.3d at 1114. There, the plaintiffs were owners of CHH, a home healthcare provider that operated under a Medicare fiscal intermediary. *Id*. at 1111. Plaintiffs sued both the government and the intermediary for damages stemming from the government's issuance of new home healthcare regulations and the government's and the intermediary's actions regarding recoupment of overpayments that CHH had received. *Id*. at 1114. The court found that "[h]earing most of [the plaintiffs'] claims would necessarily mean redeciding [the intermediary's] CHH-related Medicare decisions." *Id*. at 1115. And it found that "the procedural nature of some of the alleged violations [did not] alter the fact that they arose from the Medicare relationship between CHH and the government." *Id*.

But also in the context of traditional Medicare, the Ninth Circuit has found that claims for damages arising from tortious conduct committed by a Medicare provider relating to its provision of Medicare services may not be inextricably intertwined with a claim for Medicare benefits. *See Ardary v. Aetna Health Plans of Cal., Inc.*, 98 F.3d 496, 499-500 (9th Cir. 1996) (finding that claims in a wrongful death case, although "predicated on [the Medicare provider's] failure to authorize [an] airlift transfer," were "not inextricably intertwined because [plaintiffs were] *at bottom* not seeking to recover *benefits*") (internal quotation marks omitted; emphasis in original).

The Ninth Circuit has yet to consider a similar case in the context of Medicare Advantage, or specifically a case involving a payment dispute between an MAO and a contract provider. But the Fifth Circuit has. In *RenCare*, Humana Health Plan, "a Texas HMO under contract with CMS to provide medical care to M+C beneficiaries" contracted with plaintiff RenCare "to provide kidney dialysis services to Humana's enrollees, including its M+C enrollees." 395 F.3d. at 556-57. A dispute arose between Humana and RenCare over reimbursement for its services, and RenCare sued in Texas state court for breach of contract, detrimental reliance, fraud, and violations of state law. *Id*. at 557. After removal to federal court, the Fifth Circuit found that both the standing and the substantive basis for RenCare's claims were state law and thus were "clearly not the Medicare Act" and

that RenCare's claims were "not intertwined, much less, 'inextricably intertwined,' with a claim for Medicare benefits." *Id*. at 557, 559. Rather, the court found that "[a]t bottom RenCare's claims [were] claims for payment pursuant to a contract between private parties." *Id*. at 559.

*RenCare* based its determination in large part on the risk-shifting distinction between traditional Medicare and part C of the Act:

> One important difference in the administration of Part C, as opposed to Parts A and B, of the Medicare Act is the financial risk borne by the administering entity. Under Parts A and B, funds from the Federal Supplementary Medical Insurance Trust Fund are paid directly to providers for each qualifying service provided to a beneficiary. The funds may be paid by intermediaries or carriers contracted by CMS to process claims and disburse federal funds. Under Part C, however, CMS pays M+C organizations fixed monthly payments in advance, regardless of the value of the services actually provided to the M+C beneficiaries. In return, the M+C organization assumes responsibility and full financial risk for providing and arranging healthcare services for M+C beneficiaries, sometimes contracting health care providers to furnish medical services to those beneficiaries. Such contracts between M+C organizations and providers are subject to very few restrictions; generally, the parties may negotiate their own terms. Thus, under Part C, the government transfers the risk of providing care for M+C enrollees to the M+C organization.

*Id*. at 558-59 (internal citations omitted). Because under part C of the Act the government's risk is extinguished, the court found that payment disputes between

9

an MAO and a contract provider were "solely between" those entities and thus not intertwined with Medicare benefits. *Id*. at 559; s*ee also Ohio State Chiropractic Assoc. v. Humana Health Plan Inc*., 647 F. App'x. 619, 625 (6th Cir. 2016) (unpublished) (suggesting in dicta that *RenCare*'s reasoning might also apply to disputes between an MAO and noncontract providers).

The Eleventh Circuit has also made a distinction between claims against MAOs by contract versus noncontract providers. *See Tenet Healthsystem GB, Inc.*, 2017 WL 3567819 at *4. Plaintiffs there were a group of hospitals, all "noncontract providers," who had treated defendant's Medicare Advantage enrollees after receiving authorization to do so from the MAO. *Id*. at *1-2. The court determined that the hospitals' claims did "arise under" Medicare, finding that the hospitals were "assignees of Medicare Part C benefits" and therefore "subject to the Medicare Act's exhaustion requirements." *Id*. at *3 (quotation marks omitted). In reaching this determination, however, the court emphasized the "critical" distinction between claims for payment made by contract versus noncontract providers against an MAO: "In billing disputes between MAOs and contract providers, the provider is pursuing a claim for reimbursement that only ever belonged to itself—the claim that arose under the express terms of its contract with the MAO." *Id*. at *3 (quotation marks omitted). Citing *RenCare*, it explained that unlike claims brought by noncontract providers "[a] contract provider's claims

10

are determined entirely by reference to the written contract, not the Medicare Act." *Id*. at *5. The court distinguished *RenCare* from the case before it stating, "[a]s the *Ren*[*C*]*are* court noted, the Medicare Act explicitly allows contract providers and MAOs to define the terms of their own agreements without reference to the Medicare regulations." *Id*.

This case is materially indistinguishable from *RenCare*, and the court finds its reasoning persuasive. As was the case in *RenCare*, the dispute here is over compliance with the terms of an agreement between an MOA and a private contractor. Thus, the Medicare Act provides neither the standing nor the substantive basis for the suit. And, like in *RenCare*, Liberty's claims are not inextricably intertwined with claims for benefits. Services have already been rendered, and there is no question that the Medicare enrollees who received the services were entitled to them under their applicable plans. Resolution of Liberty's claims will require no analysis of Medicare plan documents, and no redetermination of benefits decisions. As in *RenCare*, the dispute in this case is, at bottom, a contract dispute in which neither the government nor any Medicare beneficiary has an interest.

Kaiser Foundation contends that *RenCare* is inconsistent with the Ninth's Circuit's holding in *Kaiser* and that *Kaiser* requires a different outcome. But *Kaiser* is easily distinguishable. As explained above, *Kaiser* addressed claims

11

by a provider operating under traditional Medicare, where the provider itself had a "Medicare relationship" with the government and where determination of the plaintiffs' claims would require a redetermination of the fiscal intermediary's Medicare decisions. *Kaiser*, 347 F.3d at 1115, 1116. That is not the case here—Liberty's contract dispute with Kaiser Foundation will not require a determination or redetermination of any Medicare decision.[2] Nothing in *Kaiser* requires a rejection of either the reasoning in or the outcome of *RenCare* on the question of whether the provider's claims were inextricably intertwined with a Medicare benefits determination.

        Kaiser Foundation relies on two cases from the Central District of California, *SCAN Health*, 210 F. Supp.3d at 1232, and *Prime Healthcare Servs., Inc. v. Humana Ins. Co.*, 2016 WL 6591768, at *6 (C.D. Cal. Nov. 4, 2016). Mot. at 10-12. But like *RenCare*, *SCAN Health* is also distinguishable from the case here. *SCAN Health* dealt with claims made by a provider against an MAO, the claims there were brought by a noncontract provider. 210 F. Supp. 3d at 1228. And the court relied on this distinction in reaching its decision. *Id.* at 1233 (concluding that the "distinction between contract and non-contract providers . . .

---

[2]At the September 25 hearing, the court questioned Kaiser Foundation's counsel multiple times about what Medicare-related provision or evidence might need to be considered in resolving the dispute between the parties, and she could point to none.

matters"). The court found that the claims before it were inextricably intertwined with Medicare because the dispute "hinge[d] on standards provided by Medicare and CMS regulations, not a private contract." [3] *Id.*

And the court finds the decision in *Prime Healthcare Services* unpersuasive. Although the court there dealt with a claim by a contract provider, it did not address the distinction between contract and noncontract providers. 2016 WL 6591768, at *1, 6. Rather, it relied on *SCAN Health* despite the fact that the court there had found the distinction between contract and noncontract providers material. *Id.* *6; *see SCAN Healthcare*, 210 F. Supp. 3d at 1233. To accept *Prime Health Care Services*' conclusion would gut the Supreme Court's test for whether a claim arises under the Medicare Act. Under its reasoning, any claim for payment by an MAO provider—no matter how tangentially related to a benefits decision—would arise under the Act. But the test requires that a claim be "inextricably intertwined" with a claim for benefits before the exhaustion requirement applies. And where, as here, a claim for payment may be determined entirely by reference

---

[3] Kaiser Foundation contends that *SCAN Health* found *RenCare* inconsistent with *Kaiser*, but to the extent it found any inconsistency, it did so based not on the court's determination of whether the provider's claims arose under Medicare but rather on its separate determination that the provider's rights were not protected by the MAO's administrative review process. *See SCAN Health*, 210 F. Supp. 3d at 1232; *RenCare*, 395 F.3d at 559 (finding, *in addition* to the determination that plaintiff's claims did not arise under Medicare, that plaintiff's claims were excluded from the MAO's administrative appeals process).

to a private contract, and requires no analysis or application of the Medicare Act, policies, or regulations, no consideration of plan documents or benefits, and no redetermination of a benefits decision, it simply cannot be said to be "inextricably intertwined" with a claim for Medicare benefits.

## V. CONCLUSION

Because the court finds that Liberty's claims do not arise under the Medicare Act, Kaiser's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction is DENIED.[4]

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 28, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Liberty Dialysis-Hawaii LLC v. Kaiser Found. Health Plan, Inc., et al.*, Civ. No. 17-00318 JMS-RLP, Order Denying Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals' Motion to Dismiss, ECF No. 9.

---

[4] Liberty requested that the court take judicial notice of a United States Department of Health and Human Services amicus brief filed in another matter that supports *RenCare*'s holding. ECF No. 23. Because the court resolves this matter without reference to the amicus brief, the request is denied as moot.