IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIBERTY DIALYSIS – HAWAII LLC,<br><br>       Plaintiff,<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC, and KAISER FOUNDATION HOPSITALS,<br><br>       Defendants. | Civ. No. 17-00318 JMS-RLP<br><br>ORDER (1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 42 (2) GRANTING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT, ECF NO. 50 (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNT I OF DEFENDANTS' COUNTERCLAIM, ECF NO. 34, AND (4) DENYING PLAINTIFF'S MOTIONS TO STRIKE, ECF NOS. 48, 63; APPENDIX "A" |

ORDER (1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 42 (2) GRANTING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT, ECF NO. 50 (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNT I OF DEFENDANTS' COUNTERCLAIM, ECF NO. 34, AND (4) DENYING PLAINTIFF'S MOTIONS TO STRIKE, ECF NOS. 48, 63

## I. <u>INTRODUCTION</u>

Two principle issues are currently before the court: (1) the correct interpretation of the Letter of Agreement ("LOA" or "the Agreement") between Plaintiff Liberty Dialysis – Hawaii LLC ("Liberty") and Defendant Kaiser Foundation Hospitals ("KFH"), and (2) whether the statute of limitations on

contract actions bars Count I of KFH and Defendant Kaiser Foundation Health Plan, Inc.'s (collectively "Kaiser") Counterclaim against Liberty.

Because the court finds that the LOA unambiguously supports Liberty's interpretation, Liberty's Motion for Summary Judgment is GRANTED, and Kaiser's Cross Motion is DENIED. Also DENIED are Liberty's Motions to Strike certain evidence that Kaiser submitted in support of its Summary Judgment Motion.

Liberty's Motion to Dismiss is GRANTED in part and DENIED in part because the statute of limitations has run on some, but not all, of the overpayments asserted in Count I of the Counterclaim.

## II. BACKGROUND

### A. Factual Background

Liberty and KFH entered into the LOA for Liberty to provide outpatient renal dialysis and related services to Kaiser's patients. LOA at 1, ¶ 1, ECF No. 41-2. The LOA became effective on August 1, 2007, and by its terms has been "automatically extend[ed] for additional one-year period[s]" since then. *Id*. at 1, ¶ 3; Compl. ¶ 16, ECF No. 1-2.

The LOA incorporates "Exhibit A," which covers the services and reimbursement to be provided under the Agreement. LOA at 4, ¶ 14(a) and A-1

through A-5.  Section I of Exhibit A includes a description of services.  *Id*. at A-1.

Section II includes rate tables for the various health plans, and it provides that

"KFH shall pay to [Liberty] as payment in full the rates listed" therein.  *Id*. at A-3

through A-5.

Section I of Exhibit A also describes the first of two "composite rates"

that govern Kaiser's payment obligations.  For clarity, this composite rate, referred

to in Section II as simply "the composite rate," will be referred to hereinafter as the

"Contractual Composite Rate."  Section I.B of Exhibit A describes the services and

medications to be included in the Contractual Composite Rate:

> The [Contractual Composite Rate] set forth in Section II,
> <u>Reimbursement</u>, shall only include the following drugs
> and services which shall not be separately reimbursable:
>
> 1.    Any necessary staff services related to
> specimen collection, injections described in
> I.B.6 below, declotting of external shunts,
> and other routine, non-surgical services
> related to items, all of the above as covered
> under the Medicare composite rate.
>
> 2.    Medically necessary dialysis equipment and
> support equipment as covered under the
> Medicare composite rate.
>
> 3    Purchase and delivery of all necessary
> dialysis supplies as covered under the
> Medicare composite rate.

4.　　Declotting supplies as covered under the Medicare composite rate.

5.　　Oxygen and its administration as covered under the Medicare composite rate

6.　　*Medications, which are included in the Medicare composite rate, such as Heparin, Protamine, Mannitol, Saline, Glucose, Dextrose, and local anesthetics.*

7.　　The following laboratory Services as covered under the Medicare composite rate.
　　· · ·

*Id*. at A-1 (emphasis added).

The second composite rate, the "Medicare Composite Rate" is the base composite rate used for dialysis services by the Centers for Medicare and Medicaid Services ("CMS"). *See id*. at A-4, rate table B. The parties agree that before 2011, the drug Epogen was not included in either the Contractual Composite Rate or the Medicare Composite Rate. *See* Compl. ¶ 18; Answer ¶ 18, ECF No. 27. The parties also agree that on January 1, 2011, CMS added Epogen to the list of drugs compensable under the Medicare Composite Rate. Compl ¶ 18; Answer ¶ 18. They disagree, however, about whether Epogen became included in the Contractual Composite Rate, by virtue of subsection 6 above, when it was added to the Medicare Composite Rate. Compl. ¶ 19; Answer ¶ 19.

The rate tables in Section II of Exhibit A, which are reproduced and attached as "Appendix A" to this Order, refer to both the Contractual Composite Rate and the Medicare Composite Rate. *See* LOA at A-3 through A-5, rate tables A through D (referring in table B to the "Medicare composite base rate"). A separate table applies to each applicable health plan; and each table is divided according to location (either Oahu or "Neighboring Islands"), the service or medication provided, and the amount due. *Id*. For all plans, "Hemodialysis per visit" and "Peritoneal dialysis (CAPD, CCPD), per visit" are payable on Oahu at a specific Contractual Composite Rate, the dollar figure of which varies according to plan. *Id*. For all plans other than Medicare Advantage, those same services on Neighboring Islands are payable at a specific dollar amount not tied to any composite rate (referred to by the parties at oral argument as a "flat rate").[1] *Id*. For Medicare Advantage members on Neighboring Islands, hemodialysis and peritoneal dialysis are payable at the Medicare Composite Rate "that is current at the time Services are provided." *Id*. at A-4, table B.

---

[1] Also at oral argument, counsel for Kaiser conceded that where dialysis services are covered at a "flat rate" (i.e., for Regular Health Plan Members and Added Choice Members on Neighboring Islands), Kaiser continues to be responsible for the separate Epogen rate of $92 per 1,000 units. *See* LOA at A-3 and A-5, tables A and D; *see also* Reply at 6 n.2 (stating that "certain services are not subject to the contractual composite rate, such as those provided to Regular Health Plan Members (i.e. non-government program members) on Neighboring Islands, where Kaiser still pays, pursuant to the LOA, the extraordinary rates of $928 per visit of hemodialysis, *plus* $92 per unit of Epogen."). The parties still appear to dispute, however, whether Kaiser has actually been paying the separate Epogen rates for these members.

All of the rate tables include a separate section for Epogen. And under all plans for services on Oahu, Epogen is compensable at a specific dollar amount with no reference to a composite rate. *Id*. at A-3 through A-5, tables A through D. The same is true for Epogen administered on Neighboring Islands for all plans except Medicare Advantage. *Id*. For Medicare Advantage members on Neighboring Islands, Epogen is compensable at "[a]n amount equal to 100% of the Medicare eligible rate of reimbursement that is current at the time Services are provided." *Id*. at A-4, table B.

After January 2011, Kaiser stopped separately reimbursing Liberty for Epogen administered to at least some patients under some of the plans, and the parties have been engaged in a payment dispute ever since. *See* Compl. ¶¶ 17-40. According to the Complaint, the dispute involves not only Kaiser's failure to pay separately for Epogen, but also its failure to pay for unspecified "Other Covered Services," *id*. ¶¶ 17, 19, and it includes allegations regarding Kaiser's recoupment for alleged overpayments to Liberty, *id*. ¶¶ 23-40.

## B. Procedural Background

Liberty filed its Complaint in state court on December 23, 2016, alleging claims for breach of contract, declaratory judgment, and an accounting, *id*. ¶¶ 41-56, to include "a strict and total explanation of the accounting of all

payments, reimbursements, recoupments, and offsets by [Kaiser], and to provide clear and comprehensive instructions on how to read the accounting," *id*. ¶ 50.

Kaiser removed the action on July 7, 2017. ECF No. 1. On October 12, 2017, after this court denied its Motion to Dismiss, *see Liberty Dialysis – Haw. LLC v. Kaiser Found. Health Plan, Inc.*, 2017 WL 4322385 (D. Haw. Sept. 28, 2017), Kaiser filed a Counterclaim. ECF No. 27-1. The Counterclaim alleges two Counts for breach of contract: the first is based on Kaiser's alleged overpayment for the drug Heparin, which is included expressly in the Contractual Composite Rate, *see* LOA at A-1, § I.B.6, and the second is based on Kaiser's alleged overpayment for Epogen. Counterclaim ¶¶ 5-17. Specifically, Count I of the Counterclaim alleges that Liberty "is in breach of the LOA by separately billing Kaiser for Heparin and Heparin administration services from August 1, 2007 through May 25, 2011, despite Heparin's inclusion in the [Contractual Composite Rate]." *Id*. ¶ 20.

On November 2, 2017, Liberty filed its Motion to Dismiss Count I of the Counterclaim. ECF No. 34. Kaiser filed its Opposition on December 26, 2017, ECF No. 41, and Liberty replied on February 23, 2018, ECF No. 57.

On December 26, 2017, Kaiser filed its Motion for Summary Judgment. ECF No. 42. On February 16, 2018, Liberty filed its Opposition and

Cross Motion for Summary Judgment, ECF No. 50, and a Motion to Strike certain

evidence submitted in support of Kaiser's position on the Summary Judgment

Motions, ECF No. 48. On March 8, 2018, Kaiser filed its Opposition to the

Motion to Strike, ECF No. 58, and its Reply in support of its Motion for Summary

Judgment and Opposition to Liberty's Cross Motion, ECF No. 59. Liberty filed its

Response on March 15, 2018. ECF No. 61

Liberty filed its second Motion to Strike on March 15, 2018. ECF No.

63, which Kaiser opposed on March 23, 2018. ECF No. 66.

A hearing was held on March 29, 2018.

## III. <u>STANDARDS OF REVIEW</u>

### A. **Summary Judgment**

Summary judgment is proper when there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(c). The burden initially lies with the moving party to show that there

is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary

judgment is mandated if the non-moving party 'fails to make a showing sufficient

to establish the existence of an element essential to that party's case.'" *Broussard*

*v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## B.      Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners*, *LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  "A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.*,

623 F.2d 117, 119 (9th Cir. 1980)). And a 12(b)(6) motion based on a statute-of-limitations defense may be granted "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *HIBU Inc. v. Plotkin Fin., Inc.*, 2018 WL 387380, at *1 (9th Cir. Jan. 12, 2018) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993)); *see also U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.") (internal quotation marks and citation omitted).[2]

## IV. DISCUSSION

### A.    Cross Motions for Summary Judgment

Both parties contend that the LOA is unambiguous as to KFH's obligation to reimburse Liberty for its administration of Epogen, but they disagree about whether Kaiser must separately reimburse Liberty for Epogen and its administration after Epogen became included in the Medicare Composite Rate (when a patient receives dialysis at the Contractual Composite Rate).

---

[2] Although *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "retired" the "no set of facts standard," the Ninth Circuit continues to use the "no set of facts" formulation post-*Twombly* in the statute-of-limitations context. *See, e.g., U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013).

The court's objective in contract interpretation is to "ascertain and effectuate the intention of the parties as manifested by the contract in its entirety." *Brown v. KFC Nat'l Mgmt. Co.*, 82 Haw. 226, 240, 921 P.2d 146, 160 (1996) (quoting *Univ. of Haw. Prof'l Assembly v. Univ. of Haw.*, 66 Haw. 214, 219, 659 P.2d 720, 724 (1983)); *see Haw. Med. Ass'n v. Haw Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 92, 148 P.3d 1179, 1194 (2006) ("[A] contract should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause.") (internal quotation marks and citation omitted). "Contract terms are interpreted according to their plain, ordinary and accepted sense in common speech." *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Haw. 36, 45, 305 P.3d 452, 461 (2013).

The court interprets the terms of an unambiguous contract as a matter of law. *Wittig v. Allianz, A.G.*, 112 Haw. 195, 201, 145 P.3d 738, 744 (Haw. Ct. App. 2006); *Hanagami v. China Airlines*, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1144 (Haw. 1984) ("As a general rule, the construction and legal effect to be given a contract is a question of law."). "A contract is ambiguous when its terms are reasonably susceptible to more than one meaning." *Hawaiian Ass'n of Seventh-Day Adventists*, 130 Haw. at 45, 305 P.3d at 461. And "[a]s a general rule, the court will look no further than the four corners of the contract to determine

whether an ambiguity exists." *Id*. The "majority rule for resolving irreconcilable differences between contract clauses is to enforce the clause relatively more important or principal to the contract. This rule is tempered by the corollary that the more specific clause controls the more general." *U.S. Composite Pipe S., LLC v. Frank Coluccio Constr. Co.*, 2014 WL 5023489, at *10 (D. Haw. Oct. 7, 2014) (quoting *Israel v. Chabra*, 906 N.E.2d 374, 380 n.3 (N.Y. App. 2009)); *see also* Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 32:15 at 507-10 (4th ed. 1999 & Supp. 2010).

Consistent with these rules, Hawaii courts have also long "acknowledge[d] the rule of reasonable construction," *Pancakes of Haw., Inc., v. Pomare Props. Corp.*, 85 Haw. 286, 296 n.6, 944 P.2d 83, 93 n.6 (Haw. Ct. App. 1997), which provides that when

> the language of the contract is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary and such as prudent men or women would naturally execute, while the other makes it inequitable, unusual or such as reasonable men or women would not be likely to enter into, the interpretation that makes it a rational and probable agreement must be preferred.

*Id*. (quoting *Hawaiian Pineapple Co. v. Masamari Saito*, 24 Haw. 787, 799 (1918)) (internal brackets omitted). And the Hawaii Intermediate Court of Appeals has

applied the principles of this rule in confirming the meaning of an unambiguous contract. *See id.* (citing *Hawaiian Pineapple Co.* and the rule of reasonable construction in concluding its construction of a clause "clear on its face and thus not susceptible to two constructions . . . is the only fair and reasonable" construction).

Here, the LOA is unambiguous and consistent with Liberty's interpretation. Subject to one stipulated exception, *see* ECF No. 72 and n.4 below, it requires Kaiser to reimburse Liberty separately for Epogen and its administration regardless of Epogen's inclusion in the Medicare Composite Rate. As described above, the rate tables included in the LOA expressly provide a specific reimbursement rate for Epogen, and nothing in the LOA suggests that Kaiser may avoid paying the amounts included in those tables based on a change to the Medicare Composite Rate.

Kaiser contends that because the provision defining the Contractual Composite Rate includes the clause "Medications, which are included in the Medicare composite rate, such as Heparin, Protamine, Mannitol, Saline, Glucose, Dextrose, and local anesthetics," Epogen became part of the Contractual Composite Rate when CMS moved it into the Medicare Composite Rate. *See* Defs.' Mem. at 14-16, ECF No. 42-1. Thus, it claims it is no longer required to

pay separately (at the agreed upon rates in the LOA) for Epogen when it is administered to dialysis patients treated under a Contractual Deposit Rate. It urges the court to read this provision of the LOA to mean that any medications *that are included in the Medicare Composite rate at the time services are provided* are also included in the Contractual Composite Rate. *See id.* But that interpretation is unreasonable.

First, not only would it require the court to ignore the rate tables, specific provisions for Epogen, and the agreement that Kaiser "shall pay" these rates, it also would require the court to read into the LOA words that simply aren't there: the LOA does not say, "medications *that are included in the Medicare composite rate at the time services are provided.*" Rather, it uses the present tense, untethered to the time of services, suggesting that the parties are referring to the medications included in the Medicare Composite Rate at the time the contract was drafted.[3]

---

[3] It also uses the nonrestrictive phrase "which are included in the Medicare composite rate," suggesting that the information in the phrase is parenthetical in nature and does not alter the essential meaning of the definition — that the Contractual Composite Rate includes "Medications . . . such as Heparin, Protomine, Mannitol, Saline, Glucose, Dextrose, and local anesthetics." LOA at A-1, § I.B.6; s*ee also* Bryan A. Garner, *The Redbook: A Manual on Legal Style*, at 8, 188-89 (3d ed. 2013) (discussing the formation and meaning of restrictive versus nonrestrictive phrases and clauses).

In contrast, the parties *did* use the phrase "*at the time services are provided*" elsewhere in the LOA. Under the rate table for Medicare Advantage members, hemodialysis and peritoneal dialysis for patients on Neighboring Islands is compensable at "100% of the Medicare composite base rate *that is current at the time Services are provided*." LOA at A-4, rate table B (emphasis added). The fact that the parties used different phrasing in different subsections of the LOA suggests different intended meanings.

Moreover, and perhaps most strikingly, Kaiser's interpretation would result in a windfall to Kaiser, allowing it to avoid payment for Epogen altogether for the affected plan members. For example, under Kaiser's interpretation, if on December 31, 2010, Epogen were administered to a Medicare Advantage member undergoing hemodialysis on Oahu, Liberty would be entitled to $204 — $190 for the Contractual Composite Rate, plus $14 for Epogen. *See* LOA at A-4, table B. On January 1, 2011, however, for the same services rendered to the same patient under the same contract, Liberty would be entitled to the Contractual Composite Rate of $190 only. *Id*.

In other words, Kaiser would have this court find that the parties agreed to a Contractual Composite Rate that is dynamic in terms of what it covers (whatever medications are included in the Medicare Composite Rate at the time of

15

service), but is static as to its payment to Liberty — resulting in a *tacit* agreement

that Liberty's compensation for hemodialysis and peritoneal dialysis treatments

(where Epogen is administered) would *decrease* if Epogen were ever moved within

the Medicare Composite Rate. That is, Liberty would receive the same

Contractual Composite Rate but not the contracted-for Epogen rate.

And Kaiser would have this court so find even though the other

composite rate used by the parties — the Medicare Composite Rate — is not

similarly static. Again using the example of a Medicare Advantage member, but

this time one who receives Epogen while undergoing hemodialysis on a

Neighboring Island, the LOA expressly provides that Liberty will be compensated

at the Medicare Composite Rate "current at the time [s]ervices are provided," and

it provides that Epogen will be reimbursed at "an amount equal to 100% of the

Medicare eligible rate of reimbursement that is current at the time Services are

provided." *Id*. The parties agreed at oral argument that under these provisions,

once the Medicare Composite Rate included Epogen, Liberty was not entitled to

*additional* compensation for Epogen, but Liberty was entitled to the new Medicare

rate, which reflected the inclusion of Epogen.[4] Thus, although the total

---

[4] Following oral argument, the parties submitted a stipulation regarding reimbursement
for Neighboring Islands Medicare Advantage Members that is consistent with this position,

(continued . . .)

compensation Liberty is entitled to for Medicare Advantage members receiving

dialysis with Epogen might have changed on January 1, 2011, Liberty did not

simply lose compensation altogether for administering Epogen to those patients.

When the LOA was executed, the parties unquestionably agreed that

the provision of Epogen merited *additional* compensation over and above that

provided for in the applicable fixed Contractual Composite Rate. Kaiser's

interpretation — that the parties agreed Liberty would forego any additional

compensation if Epogen were ever included in the Medicare Composite Rate — is

simply unreasonable. S*ee Hawaiian Ass'n of Seventh-Day Adventists*, 130 Haw. at

45, 305 P.3d at 461 (contract must be "reasonably susceptible" to proffered

meaning); *Hawaiian Pineapple Co.,* 24 Haw. at 799 (stating the rule of reasonable

construction); *see also Holbrook v. United States*, 194 F. Supp. 252, 255 (D. Or.

1961) ("Business contracts should be construed with business sense as they

naturally would be understood by intelligent men of affairs.").

For these reasons, the court finds the LOA unambiguous and

consistent with Liberty's interpretation. Kaiser's interpretation is unreasonable as

---

(. . . continued)
although it reflects CMS's change from a Medicare Composite Rate to a "Medicare Bundle
Rate." ECF No. 72.

a matter of law.  Thus, the court DENIES Kaiser's Motion for Summary

Judgment,[5] and GRANTS Liberty's Cross Motion.

**B.**         **Motion to Dismiss**

According to Liberty, Kaiser fails to assert a claim upon which relief

can be granted because Hawaii's six-year statute of limitations on contract actions,

*see* Hawaii Revised Statutes ("HRS") § 657-1, has run on all of the alleged

overpayments Kaiser asserts in Count I of the Counterclaim.  Mot. at 2, ECF No.

34.  It also argues that Count I does not relate back to its Complaint under Hawaii

law, and, even if it did, any alleged overpayments for Heparin made before

December 23, 2010, six years before date the Complaint was filed, are still outside

the limitation period.  *Id.* at 9-10.

As a preliminary matter, the parties disagree about the correct

standard to apply in determining whether the Counterclaim relates back to the

Complaint.  Kaiser contends it has met the federal standard, while Liberty contends

---

[5] Kaiser has also moved for summary judgment on Liberty's claim for an accounting, asserting variously that Liberty is not entitled to an accounting, already has an accounting, and an accounting will not be necessary once the court determines the correct interpretation of the LOA.  *See* Defs.' Mem. at 17-19.  Given the court's rejection of Kaiser's interpretation of the LOA, the longstanding nature of the billing dispute that is at the heart of this case, and the fact that, at least based on the current record, the accounts between the parties appear to be sufficiently complicated, Liberty's claim may go forward at this time.  Liberty acknowledged at oral argument, however, that this claim may become moot as discovery progresses.

Likewise, Kaiser moved for summary judgment on Liberty's claim for a declaratory judgment (regarding application of the LOA to the parties' interactions going forward).  Although this claim too may be or become moot, the claim may proceed at this time.

that Hawaii's "more stringent . . . 'relation back' doctrine [is] applicable to this case."  Reply at 11, ECF No. 57.

Under federal law, "the majority of courts . . . have concluded that a plaintiff's institution of a suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim."  *Yates v. Washoe Cty. Sch. Dist.*, 2007 WL 3256576, at *2 (D. Nev. Oct. 31, 2007) (citing 6 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1419 (2d ed. 1990)); *see, e.g., Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982).[6]  And Federal Rule of Civil Procedure 13(a)(1) defines a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Federal courts apply "the liberal 'logical relationship' test to determine whether two claims arise out of the same 'transaction or occurrence.'"  *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) ("'Transaction' is a word of flexible meaning.  It may comprehend a series of occurrences" if they have a "logical relationship.")).

---

[6] Although the Ninth Circuit has not yet spoken definitively on the issue, it has cited *Burlington* with approval.  *See N. Cty. Commc'ns Corp. v. Sprint Commc'ns Co, L.P.*, 691 F. App'x 466, 467-68 (9th Cir. 2017).

In contrast, the Hawaii Supreme Court has held that an amended pleading does not relate back to the original unless it "arose out of a situation previously described in timely pleadings," and it has refused to allow relation back when the subsequent pleading requires evidentiary proof "not reasonably foreseeable from the earlier pleadings." *Mauian Hotel, Inc. v. Maui Pineapple Co.*, 52 Haw. 563, 567-68, 481 P.2d 310, 314 (1971) (addressing relation back under Hawaii Rule of Civil Procedure 15(c)).

Here, the court need not determine which standard applies because the Counterclaim meets both standards. As described above, Kaiser's claim for overpayment for Heparin arises out of the LOA — indeed out of the very same provision this court is asked to interpret in the parties' Motions for Summary Judgment. And it is logically related to the larger payment dispute described above.

Moreover, the evidentiary proof for the Counterclaim is reasonably foreseeable given the allegations in the Complaint about Kaiser's recoupment for alleged overpayments. Although Heparin is not specifically mentioned in the Complaint, the Complaint also refers to Kaiser's demand letter, in which Kaiser addresses alleged overpayment for Heparin. And Liberty has requested a complete accounting from Kaiser "of all payments, reimbursements, [and] recoupments,"

which presumably would include the payments and recoupments relating to Heparin. Thus, the court finds that the Counterclaim relates back to the Complaint under both the Federal and Hawaii standards.

Nonetheless, in Hawaii, a party's failure to make payments under a contract creates a separate claim for each missed payment, each of which is subject to the statutory limitation period. *See Lindner v. Meadow Gold Dairies, Inc.*, 515 F. Supp. 2d 1141, 1152-53 (D. Haw. 2007). As noted above, Kaiser has not attempted to explain its suggestion that a "factual issue" bars dismissal of claims arising outside of the limitation period. Thus, Liberty's Motion is GRANTED as to alleged overpayments occurring before December 23, 2010; it is DENIED, however, as to payments made on or after that date.

## V. CONCLUSION

Regarding the Cross Motions for Summary Judgment as to the interpretation of the LOA, Kaiser's Motion is DENIED, and Liberty's Motion is GRANTED.[7]

---

[7] As noted above, Liberty filed Motions to Strike certain evidence Kaiser submitted in support of its Motion for Summary Judgment. The Motions to Strike were unnecessary because the court only considers relevant evidence when determining whether summary judgment is appropriate. In any event, given the court's ruling on Liberty's Summary Judgment Motion, the Motions to Strike are DENIED as moot.

Liberty's Motion to Dismiss Count I of the Counterclaim is GRANTED in part and DENIED in part. Count I may proceed for alleged overpayments for Heparin occurring on or after December 23, 2010, but to the extent Count I alleges overpayments for Heparin before that date, that portion of Count I is DISMISSED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 13, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Liberty Dialysis – Haw. LLC v. Kaiser Found. Health Plan, Inc. & Kaiser Found. Hosps.*, Civ. No. 17-00318 JMS-RLP, Order (1) Denying Defendants' Motion for Summary Judgment, ECF No. 42 (2) Granting Plaintiff's Cross Motion for Summary Judgment, ECF No. 50 (3) Granting in Part and Denying in Part Plaintiff's Motion to Dismiss Count I of Defendants' Counterclaim, ECF No. 34, and (4) Denying Plaintiff's Motions to Strike, ECF Nos. 48, 63; Appendix "A"

22

# Rate Tables contained in LOA, Exhibit A § II

**A.      Regular Health Plan Members:**

|  | Oahu | Neighboring Islands |
|---|---|---|
| **Hemodialysis, per visit** | $400 composite rate | $928 |
| **Peritoneal dialysis (CAPD, CCPD), per visit** | $171.42 composite rate | $397.60 |
| **Epogen, per 1,000 units** | $20 | $92 |
| **Patient training (CAPD, CCPD, home hemodialysis)** | $260 per training session | $260 per training session |
| **Other Covered Services** | 80% of Affiliated Provider's billed charges | 80% of Affiliated Provider's billed charges |

**B.      Medicare Advantage Members:**

|  | Oahu | Neighboring Islands |
|---|---|---|
| **Hemodialysis, per visit** | $190 composite rate | 100% of the Medicare composite base rate that is current at the time Services are provided. |
| **Peritoneal dialysis (CAPD, CCPD), per visit** | $81.42 composite rate | 100% of the Medicare composite base rate that is current at the time Services are provided. |
| **Epogen, per 1,000 units** | $14 | An amount equal to 100% of the Medicare eligible rate of reimbursement that is current at the time Services are provided. |
| **Patient training (CAPD, CCPD, home hemodialysis)** | An amount equal to 100% of the Medicare eligible rate of reimbursement that is current at the time Services are provided (limited to a maximum of 15 training sessions). | An amount equal to 100% of the Medicare eligible rate of reimbursement that is current at the time Services are provided (limited to a maximum of 15 training sessions). |
| **Other Covered Services** | 43% of Affiliated Provider's billed charges | 43% of Affiliated Provider's billed charges |

## C.  QUEST and QUEST-Net Members:

|  | Oahu | Neighboring Islands |
|---|---|---|
| **Hemodialysis, per visit** | $170 composite rate | $170 composite rate |
| **Peritoneal dialysis (CAPD, CCPD), per visit** | $72.85 composite rate | $72.85 composite rate |
| **Epogen, per 1,000 units** | $14 | $14 |
| **Patient training (CAPD, CCPD, home hemodialysis)** | An amount equal to 95% of the Medicare eligible rate of reimbursement that is current at the time Services are provided (limited to a maximum of 15 training sessions). | An amount equal to 95% of the Medicare eligible rate of reimbursement that is current at the time Services are provided (limited to a maximum of 15 training sessions). |
| **Other Covered Services** | 43% of Affiliated Provider's billed charges | 43% of Affiliated Provider's billed charges |

## D.  Added Choice Members:

|  | Oahu | Neighboring Islands |
|---|---|---|
| **Hemodialysis, per visit** | $400 composite rate | $928 |
| **Peritoneal dialysis (CAPD, CCPD), per visit** | $171.42 composite rate | $397.60 |
| **Epogen, per 1,000 units** | $20 | $92 |
| **Patient training (CAPD, CCPD, home hemodialysis)** | $260 per training session | $260 per training session |
| **Other Covered Services** | 80% of Affiliated Provider's billed charges | 80% of Affiliated Provider's billed charges |

Appendix A