IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LIBERTY DIALYSIS – HAWAII LLC, | ) ) ) | CIVIL NO. 17-00318 JMS-WRP |
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART |
| vs. | ) ) ) | PLAINTIFF LIBERTY DIALYSIS – HAWAII LLC'S MOTION TO |
| KAISER FOUNDATION HOSPITALS AND KAISER FOUNDATION HEALTH PLAN, INC., | ) ) ) ) | ENFORCE SETTLEMENT ON THE RECORD |
| Defendants. | ) ) ) ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND
DENY IN PART PLAINTIFF LIBERTY DIALYSIS –HAWAII LLC'S
MOTION TO ENFORCE SETTLEMENT ON THE RECORD

Before the Court is Plaintiff Liberty Dialysis – Hawaii LLC's

(Liberty) Motion to Enforce Settlement on the Record, filed on December 27, 2019

(Motion). See ECF No. 237. Defendant Kaiser Foundation Hospitals and

Defendant Kaiser Foundation Health Plan, Inc. (collectively Kaiser) filed its

Opposition on January 16, 2020. See ECF No. 244. Liberty filed its Reply on

January 31, 2020. See ECF No. 252. Kaiser filed a Motion to Strike, or in the

Alternative Disregard, Portions of Liberty's Reply on February 7, 2020, asking the

Court to strike portions of Liberty's Reply that Kaiser contained new arguments

and new evidence. See ECF No. 254. The Court denied Kaiser's request and

instead allowed Kaiser an opportunity to fully address the alleged new evidence and arguments raised in Liberty's Reply.  See ECF No. 252.  Kaiser filed its Sur-Reply on February 12, 2020.  See ECF No. 256.  Liberty filed its Response to the Sur-Reply on February 14, 2020.  See ECF No. 258.

The parties jointly requested to continue the hearing on the Motion set for February 27, 2020 but stated that all counsel was not available until the second week of April 2020.  See ECF No. 262.   Following a status conference to address the parties' request to continue the hearing at which both parties agreed that an evidentiary hearing was not necessary, the Court vacated the hearing and took the motion under advisement.  See ECF No. 264.  The Court finds the Motion suitable for disposition without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice of the United States District Court for the District of Hawaii.

The Court FINDS AND RECOMMENDS that Liberty's Motion be GRANTED as detailed below.[1]

<u>BACKGROUND</u>

Liberty filed this action in 2017 related the parties' agreement, entitled Letter of Agreement for Outpatient Renal Dialysis Services, for Liberty to

---

[1] Within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court.  A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

provide outpatient renal dialysis and related services to the patients of Kaiser.  See

ECF No. 1-2.  In the Complaint, Liberty alleges that beginning in 2011 Kaiser

reduced its payments to Liberty for some services and stopped paying altogether

for others.  See id. ¶¶ 17.  Liberty further claims that Kaiser offset some payments

to Liberty for alleged past overpayments for specific services.  See id. ¶¶ 23-27.

Liberty asserted claims for breach of contract, accounting, and declaratory

judgment.  See id. ¶¶ 41-56.

Following the district court's order on the parties' cross motions for

summary judgment in mid-2018, the Court ordered the parties to mediation.  See

ECF No. 123, 126.  Based on the parties' agreement, the Court extended the time

to participate in mediation until May 31, 2019.  See ECF Nos. 127, 138, 144.  The

parties reported to the Court on June 7, 2019 that mediation was not successful in

resolving their claims and that no further mediation was scheduled.  See ECF No.

173.  The parties did not inform the Court that they were returning to mediation in

late 2019.

On November 15, 2019, the parties contacted the Court and asked to

appear for a Settlement on the Record, which was held the same day.  See ECF No.

234 at 3.  The parties stated that they had reached settlement through mediation on

November 14, 2019.  See ECF No. 234 at 3.

For purposes of this Motion, the settlement terms placed on the record

are referred to as the Settlement Agreement.  The Settlement Agreement reflects

two important dynamics about the parties' relationship:  first, it resolved the

parties' legal dispute that spanned several years of their prior dealings; and,

second, it acknowledged a business relationship that would continue beyond

November 2019.  The terms of the Settlement Agreement used broad, clear

language to address these dynamics.  Specifically, to address the resolution of the

prior dealings, the parties agreed to a "full and mutual release of all claims prior to

the date of the settlement, [November 14, 2019]."  <u>See</u> ECF No. 234 at 3.  And, to

address the continuing business relationship, the parties agreed that they would

continue work in good faith moving forward.  <u>See</u> ECF No. 235 at 2 (providing

that the parties "will continue to process and adjudicate reimbursements in good

faith pursuant to the ordinary course of business").[2]

When the settlement was placed on the record, this Court found that

the parties had entered into a valid and enforceable settlement.  <u>See</u> ECF No. 234

at 7.  Again, when counsel for Liberty contacted the Court by letter in December

---

[2] During the settlement on the record, the Court allowed the parties to state certain settlement provisions under seal.  <u>See</u> ECF No. 234 at 2.  However, the Court finds that this particular sentence, which the parties recited during the sealed portion of the settlement on the record, is no longer entitled to confidential treatment.  The sentence does not contain any monetary terms or any financial information regarding the parties' ongoing business relationship and should be public for purposes of the discussion about enforcing settlement and in future filings.

4

2019 about enforcing the Settlement Agreement (and arguing that Kaiser breached the Settlement Agreement), the Court issued a Minute Order reiterating that the parties had reached a valid and enforceable settlement.  See ECF No. 236. Importantly, in the briefing submitted on the Motion, both Liberty and Kaiser agree that a valid and enforceable settlement was reached.  See ECF No. 237-1 at 2 (stating that the Court "unequivocally [held] that the Parties have a "valid and enforceable settlement"); see ECF No. 244 at 18 ("The parties agree with the Court that the Settlement Terms form a valid and enforceable settlement.").  Yet, even with the parties' agreement and the clear terms of the Settlement Agreement, the parties fundamentally disagree about how to address an issue that is not new to this litigation: Kaiser's purported overpayments to Liberty.

From the beginning of this litigation, Liberty has alleged that Kaiser impermissibly claimed past overpayments for services and took self-help remedies to recover for those overpayments.  See ECF No. 1-2, Complaint, ¶¶ 25-29, 35-38. In the Complaint, Liberty alleged that the parties' contract does not authorize Kaiser to offset or recoup purported overpayments.  See id. ¶¶ 37-38 ("Kaiser's improper recoupment from Liberty has been accomplished by offsetting its claims of 'overpayment' against current claims as they come due . . . [and] [n]othing in the Agreement authorizes the Defendants to offset disputed claims of overpayment on past claims against the balance indisputably due on future [claims].").  Liberty

also alleged in the Complaint that Kaiser's recoupment and offsetting violated Hawaii Revised Statute Section 431:13-108.  Id. ¶ 54.

In contrast to Liberty's allegations in its Complaint, Kaiser has asserted its ability to recover overpayments from Liberty throughout this litigation. Although Kaiser did not have a cause of action against Liberty for overpayments in this litigation at the time of settlement, "Kaiser has always maintained [that] any damages calculation must also address overpayments that Kaiser made and did not recoup."  ECF No. 204 at 11, Kaiser's Response to Plaintiff's Statement of the Remaining Issues to be Tried, filed on August 2, 2019.  Kaiser argued, and this Court agreed, that information about overpayments was relevant and discoverable in this action.  See ECF No. 182 at 18-19.  Specifically, this Court denied Liberty's motion for a protective order and ordered that Kaiser was allowed to depose Liberty's corporate representative about Kaiser's overpayments generally.  See id.

It is undisputed that *after* the date of settlement, Kaiser sent notices to Liberty asserting that Kaiser overpaid Liberty for services provided between October 2014 and April 2019 in the amount of $101,845.23.  See ECF No. 237-6. Kaiser's notices provide various reasons for the overpayments including: "Pricing Other," "Medicare COB not identified," "Case Rate incorrectly applied or not applied," "Provider error on Claim corrected by provides (NO other code applies)," "Duplicate claim," "Member not eligible," "Commercial COB Rule incorrectly

6

applied," or "Contract loaded retroactively."  See ECF No. 237-6.  Additionally,

Liberty contends that since the date of settlement Kaiser has recouped $43,562.66

from payments to Liberty made after the date of settlement for purported

overpayments that occurred *before* the date of settlement.  See ECF No. 252-5,

Decl. of Karen Vaughn, ¶¶ 7-12 (stating that Kaiser recouped payment from

November through December 2019 for overpayments that allegedly occurred from

June 2019 through September 2019).

In the present Motion, Liberty argues that the parties released all

claims as of the date of settlement and that Kaiser's action related to overpayments

since the date of settlement are a breach of the Settlement Agreement.  Kaiser

argues that it is allowed under the Settlement Agreement to offset or recoup

overpayments for any overpayments to Liberty.

<u>DISCUSSION</u>

**A.  The Settlement Agreement is Valid and Enforceable**

It is "well established that the trial court has power to summarily

enforce on motion a settlement agreement entered into by the litigants while the

litigation is pending before it." <u>City Equities Anaheim, Ltd. v. Lincoln Plaza Dev.</u>

<u>Co.</u>, 22 F.3d 954, 957 (9th Cir. 1994) (citation omitted); <u>see</u> <u>also</u> <u>Callie v. Near</u>,

829 F.2d 888, 890 (9th Cir. 1987).  "[A] motion to enforce [a] settlement

agreement essentially is an action to specifically enforce a contract." <u>Adams v.</u>

Johns–Manville Corp., 876 F.2d 702, 709 (9th Cir. 1989).  Federal courts apply

state contract law principles when enforcing settlement agreements.  See O'Neil v.

Bunge Corp., 365 F.3d 820, 822 (9th Cir. 2004); see also Boskoff v. Yano, 217 F.

Supp. 2d 1077, 1085 (D. Haw. 2001) (applying Hawaii contract law).  "As is the

case in many jurisdictions, Hawaii law "favors the resolution of controversies

through compromise or settlement rather than by litigation."  State Farm Fire &

Cas. Co. v. Pacific Rent–All, Inc., 978 P.2d 753, 761 (Haw. 1999); Boskoff, 217 F.

Supp. 2d at 1085.

      A district court may only enforce ***complete*** settlement agreements.

See Callie, 829 F.2d at 890 (emphasis added).  A complete settlement agreement

requires agreement on all "material terms" and "the intent of the parties to bind

themselves."  Id. at 891; see also Carson v. Saito, 489 P.2d 636, 638 (Haw. 1971)

("There must be mutual assent or a meeting of the minds on all essential elements

or terms in order to form a binding contract." (quoting Honolulu Rapid Transit Co.

v. Paschoal, 449 P.2d 123, 127 (Haw. 1968)).  "Where material facts concerning

the existence or terms of an agreement to settle are in dispute, the parties must be

allowed an evidentiary hearing."  Callie, 829 F.2d at 890.  However, when the

parties have placed their settlement on the record in court, the Ninth Circuit has

held that "there was no need for an evidentiary hearing on whether an agreement

existed, or what its terms were."  Doi v. Halekulani Corp., 276 F.3d 1131, 1139

(9th Cir. 2002).

Here, the parties do not dispute the validity of the contract formation or the parties' intent to be bound.  See ECF Nos. 237, 252, 256, 258.  After the terms of the settlement were placed on the record, the Court determined "that the parties have entered into a valid and enforceable settlement" based on those terms.  ECF No. 229.  Therefore, with the parties' agreement, the Court finds that an evidentiary hearing is not necessary to determine whether an agreement existed or what its terms were.  See Doi, 276 F.3d at 1139.

Because a valid and enforceable agreement exists, the Court must next interpret the provisions at issue, determine whether the Settlement Agreement was materially breached, and if so, by which party, and the appropriate remedy.  Under Hawaii law, when interpreting a written agreement "courts should not draw inferences ... regarding the parties' intent when the [agreement] is definite and unambiguous."  State Farm Fire & Cas. Co., 978 P.2d at 762.  The court must "look no further than the four corners of the document to determine whether an ambiguity exists."  Id.  "A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning."  Airgo, Inc. v. Horizon Cargo Transport Inc., 670 P.2d 1277, 1280 (Haw. 1983) (citations omitted).

### B.  The Release Provision is Not Ambiguous

The release provision of the Settlement Agreement provides:

9

"Settlement shall constitute a full and mutual release of all claims up to the date of the settlement, which was November 14, 2019."  See ECF No. 234 at 3.  The parties present conflicting interpretations of this provision; however, neither party argues that this term is ambiguous.  The parties' disagreement as to the meaning of a term does not render clear language ambiguous.  See State Farm Mut. Auto. Ins. Co. v. Fermahin, 836 P.2d 1074, 1077 (Haw. 1992); Hawaiian Ins. & Guar. Co. v. Chief Clerk of the First Circuit Court, 713 P.2d 427, 431 (Haw. 1986).  Contract terms should be interpreted according to their plain, ordinary meaning and accepted use in common speech.  See Amfac, Inc. v. Waikiki Beachcomber Inv. Corp., 839 P.2d 10, 24 (Haw. 1992).

The plain and ordinary language of "a full and mutual release of all claims" includes *all* claims regardless of whether or not the claims have been affirmatively asserted as causes of action in this litigation.  The plain and ordinary meaning of "full and mutual" is that it releases known and unknown claims between both parties – not just the known causes of action in this litigation that Liberty asserted against Kaiser.  The words "full," "mutual" and "all" are broad and inclusive.  The plain meaning of this provision includes any claims of overpayment related to amounts paid by Kaiser to Liberty prior to the date of the settlement.  The parties used the phrase "a full and mutual release of all claims" *without* any qualifiers or limitations.  At the time that the terms were placed on the

10

record, the parties knew that they had an ongoing business relationship separate from this lawsuit.  These are sophisticated parties that have been engaged in contentious litigation for over three years.  With this knowledge, they chose not to include any limitations on the release of claims and chose instead to make the release broad by using the terms "full and mutual release of all claims."

Looking at the Settlement Agreement as a whole further supports this construction of the release provision.  See Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 305 P.3d 452, 461 (Haw. 2013) ("The court's objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety."); see also Joy A. McElroy, M.D., Inc. v. Maryl Grp., Inc., 114 P.3d 929, 936 (Haw. Ct. App. 2005) (stating that the "goal when interpreting a contractual provision is to determine the intention of the parties[, which] . . . is to be gathered from the whole instrument") (citations omitted).  Specifically, a later provision in the Settlement Agreement provides that the parties would stipulate to dismissal "with prejudice of ***all claims in the litigation***."[3]  See ECF No. 235 at 2 (emphasis added).  Reading the release provision and this dismissal provision together demonstrates that the parties intentionally used different phrases ("all

---

[3] As discussed in Footnote 2 above, the Court likewise finds that this statement, which was recited during the sealed portion of the settlement on the record, is no longer entitled to confidential treatment.  This statement reflects that the parties agreed to submit a stipulation for dismissal, which will be filed on the public docket after Court approval.

claims" versus "all claims in the litigation") to reflect a broader and a narrower universe of "claims." Considering the Settlement Agreement as a whole and giving reasonable meaning to all of its terms, the Court concludes that the release provision applied to all claims, not just litigation claims. See Stanford Carr Dev. Corp. v. Unity House, Inc., 141 P.3d 459, 470-71 ( Haw. 2006) ("We have long expressed our disapproval of interpreting a contract such that any provision be rendered meaningless."); see also Restatement (Second) Contracts, § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.") and cmt. b ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous.").

Even if the Court were to ignore the plain meaning of the term "all claims" and more narrowly construe it to mean "all claims in the litigation," the Court would reach the same conclusion. Again, Kaiser has asserted its ability to recover overpayments from Liberty *throughout* this litigation. While Kaiser did not have a cause of action against Liberty for overpayments in this litigation at the time of settlement, "Kaiser has always maintained [that] any damages calculation must also address overpayments that Kaiser made and did not recoup." ECF No. 204 at 11, Kaiser's Response to Plaintiff's Statement of the Remaining Issues to be Tried, filed on August 2, 2019. Kaiser argued, and this Court agreed, that

information about overpayments was relevant and discoverable in this action.  See

ECF No. 182 at 18-19.  The Court finds that the matter of Kaiser's overpayments

was a litigation claim.[4]  The Court finds that Kaiser's argument that overpayments

were not "litigation claims" is disproved by the record in this lawsuit and, had this

case not settled, Kaiser's would have made overpayment arguments as part of the

damages calculation at trial.

Despite the plain meaning of "all claims" in the release provision,

Kaiser also continues to rely on Section 431:13-108 of the Hawaii Revised

Statutes[5] throughout its Opposition to support its right to recoup overpayments

after the date of settlement – *including from payments for services dating back to*

*October 2014*.  Kaiser argues that Section 431:13-108 permits them to offset and

recoup overpayments from payments made prior to November 14, 2019

---

[4]  Kaiser acknowledges in its Opposition to the Motion that the release
provision in the Settlement Agreement includes "litigation claims."  See ECF No.
244 at 19-20 ("the Settlement Terms in their entirety indicate that there was a
release of litigation claims").

[5]  Section 431:12-108 is the same statute that Kaiser relied on in a
prior filing to the Court to argue that Kaiser was entitled to offset any
overpayments that it made to Liberty.  See ECF No. 204 at 11, Kaiser's Response
to Plaintiff's Statement of the Remaining Issues to be Tried, at 13-14 (citing Haw.
Rev. Stat. § 431:13-108).  Indeed, it is the same statute that Liberty alleged in the
Complaint that Kaiser was violating in recouping purported overpayments.  See
ECF No. 1-2 ¶ 54 ("Liberty further contends that it was inappropriate and in
violation of H.R.S. § 431:13-108 for the Defendants to institute recoupment, by
placing a negative balance on Liberty's account and offsetting their claims of
'overpayment' against current claims as they come due.").

***irrespective of the Settlement Agreement.***  That is, Kaiser contends that it can

settle a civil action in November 2019 that covered years of prior dealings between

Liberty and Kaiser, grant a "full and mutual release of all claims," and then, after

the settlement, go back and request refunds for (or recoup) overpayments for

services from October 2014 through April 2019 because of a Hawaii statute.  The

Court disagrees.

The purpose of the Settlement Agreement was to fully and completely

resolve the parties' claims up to the date of settlement.  As detailed above,

throughout this litigation Liberty has asserted that Kaiser has impermissibly

claimed that it made overpayments to Liberty and taken self-help recoupment to

offset those overpayments.  It would undermine the purpose of the parties'

Settlement Agreement to interpret "all claims" to exclude Kaiser's claims of

overpayment.

The question now becomes whether Kaiser's actions after settlement

breached the agreement to release "all claims" up to the date of settlement.

### C.  Whether Kaiser Breached the Settlement Agreement

There is no dispute that after the date of settlement Kaiser sent notices

to Liberty regarding purported overpayments of $101,845.23 for services provided

between October 2014 and April 2019.  See ECF No. 237-6.  Additionally, Liberty

contends that after the date of settlement Kaiser has recouped $43,562.66 from

14

payments to Liberty made after the date of settlement for purported overpayments that occurred from June 2019 to September 2019. <u>See</u> ECF No. 252-5, ¶¶ 7-12. The parties also agree that since the date of settlement, Liberty has submitted requests for reimbursement to Kaiser and Kaiser has paid approximately $678,255.52 for services provided to Kaiser's members before the date of settlement. <u>See</u> ECF No. 244 at 10; ECF No. 252 at 9 n.2.

Kaiser argues that its actions regarding overpayments do not breach the Settlement Agreement because of a later provision regarding the parties' good faith efforts moving forward. Accordingly, the Court must turn to the interpretation and application of this term, which provides in relevant part that "[t]he parties will continue to process and adjudicate reimbursements in good faith pursuant to the ordinary course of business." <u>See</u> ECF No. 235 at 2. This sentence does not contain a temporal reference unlike the rest of this provision, which expressly applies to services provided from November 2019 forward. The parties disagree about what it means to "process and adjudicate reimbursements in good faith pursuant to the ordinary course of business."

Kaiser argues that this provision allows it to seek recoupment for any alleged overpayments that Kaiser might have made throughout the parties' business relationship. <u>See</u> ECF No. 244 at 8-11, 19-26. Liberty argues that this provision was intended only to apply to reimbursements (i.e., bills for payment

15

sent by Liberty to Kaiser for member services) that were for services that had been rendered at the time of settlement, but had not yet been billed, and for requests for reimbursement that were pending review and payment by Kaiser at the time of settlement.  See ECF No. 252 at 9.

Given the language used by the parties in the Settlement Agreement and the proposed alternative interpretations, the Court concludes that the first sentence of this provision is reasonably susceptible to more than one meaning.  See Airgo, Inc., 670 P.2d at 1280.  If "an ambiguity exists in [an agreement], its proper means of construction remains to be determined as a matter of law[,]" by examining "extrinsic evidence, i.e., all evidence outside of the writing including parol evidence, . . . to determine the true intent of the parties if there is any doubt or controversy as to the meaning of the language embodying their bargain." Hokama v. Relinc Corp., 559 P.2d 279, 283 (Haw. 1977); see also Hawaiian Ass'n of Seventh–Day Adventists, 305 P.3d at 461-62 (holding that the parol evidence rule "permit[s] the court to consider extrinsic evidence when the writing in question is ambiguous or incomplete. Where there is any doubt or controversy as to the meaning of the language, the court is permitted to consider parol evidence to explain the intent of the parties and the circumstances under which the agreement was executed.") (citations omitted); see also Stewart v. Brennan, 748 P.2d 816, 821 (Haw. Ct. App. 1988) (holding that when the meaning of specific contractual terms

16

is unclear, a court may consider extrinsic evidence, such as evidence of
surrounding circumstances and the subsequent acts and conduct of the parties);
Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc., 2017 WL 5895162, at *7 (D. Haw.
June 27, 2017) (citation omitted) ("Hawaii also allows consideration of extrinsic
evidence to explain the intent of the parties and circumstances under which the
agreement was executed if there is doubt as to the agreement's meaning.").

Under Hawaii contract law, if the terms of a contract are ambiguous,
courts may consider the course of dealing between the parties.  See Stewart v.
Brennan, 748 P.2d 816, 821 (Haw. Ct. App. 1988).  Because these parties are
engaged in an ongoing business relationship, the parties' contract provides
evidence of the parties' course of dealing.  See ECF No. 43-4.  Turning to the
contract, the section of the parties' agreement defined as "REIMBURSEMENT"
is applicable to interpreting the ambiguous term in the Settlement Agreement.  Id.
at 8.  That section provides that Kaiser "shall pay to [Liberty] as payment in full
the rates listed below, minus any copayments or deductibles payable by Member,
for services provided to Members.  [Liberty] will accept as payment in full the
rates listed below."  Id.  In a section titled "Billing," also applicable here, the
contract provides that Liberty shall submit "claims for all services provided" to
Kaiser "in a reasonable time frame, which does not exceed ninety (90) calendar
days."  Id. at 3.  That same section provides that compensation for services

17

rendered by Liberty "will be made within thirty (30) days of receipt" of an appropriate claim. See id. There is no provision for Kaiser to offset overpayments against future payment or to seek reimbursement of overpayments in this section or elsewhere in the contract. Similarly, the parties' contract does not reference the Hawaii statute that Kaiser relies on to assert that it is entitled to seek reimbursement or recoup for overpayments.

Because of the parties' ongoing business relationship, at the time of settlement, it would be reasonable for Liberty to have not yet billed Kaiser for services provided to Kaiser's members before settlement because the parties' contract allows 90 days for Liberty to submits its requests for reimbursement to Kaiser. See ECF No. 43-4 at 3. Likewise, at the time of settlement, it would have been reasonable for Kaiser to have not yet paid Liberty for requests for reimbursement that it had received from Liberty because the parties' contract allows 30 days for Kaiser to compensate Liberty. See id. Based on this course of dealing, the provision at issue was intended to mean that Liberty could continue to request reimbursement from Kaiser as allowed under the parties' contract for services provided *before* the date of settlement and that Kaiser could continue to review and process the reimbursement requests that it had received *before* the date of the settlement but had not yet paid and could continue review and process the requests that it received for services provided *before* the date of settlement.

18

Accordingly, the parties' contract as evidence of their course of dealing supports Liberty's interpretation that the Settlement Agreement provision at issue.

      Kaiser argues that seeking to recover overpayments on prior reimbursements is part of its regular business and submitted two declarations from Kaiser employees who participated in the mediation in support of this argument, both of whom state that they understood the provision at issue to include Kaiser's ability to recoup past overpayments from reimbursements.  <u>See</u> ECF Nos. 244-9, 244-11.  However, these statements conflict with the plain and ordinary meaning of "all claims," as discussed above, which includes claims for overpayment and conflict with the parties' intent to fully and completely resolve all claims up to the date of settlement.  Further, the declaration of Emily Shapiro states that she understood that the Settlement Agreement would resolve the issues to be addressed at trial and Kaiser's defenses.  <u>See</u> ECF No. 244-9 ¶ 15.  As noted above, Kaiser's defenses and arguments in damages included claims for offset of any overpayments.  Accordingly, this evidence also supports the interpretation of the Settlement Agreement that overpayments were not excepted out of the release of "all claims" and that any overpayments made before the date of settlement were not considered part of the parties' dealings moving forward after the date of settlement.

      Reading the first sentence of the provision at issue in context with the

19

entire Settlement Agreement and the available extrinsic evidence, the Court finds

that this term was intended to allow the parties to proceed with the

"REIMBURSEMENT" and "Billing" process set forth in the parties' contract for

services that had been rendered by Liberty, but had not yet been billed or paid at

the time of the Settlement Agreement.

Applying this interpretation to the parties' actions after settlement, the

Court finds that Liberty's submission of requests for reimbursement for services

provided prior to the date of settlement and Kaiser's payment of those requests for

reimbursement was contemplated and permissible under the Settlement

Agreement.  However, contrary to Kaiser's argument, Kaiser's actions in seeking

to recoup or offset purported overpayments made before the date of settlement was

not allowed under the Settlement Agreement.  Accordingly, Kaiser's actions

regarding purported overpayments made prior to the date of settlement were a

material breach of the parties' release of all claims.  See Velez v. The Bank of

N.Y. Mellon, 2011 WL 572523, at *3 (D. Haw. Feb. 15, 2011) (explaining

elements of breach of contract claim under Hawaii law); Sharpe v. FDIC, 126 F.3d

1147, 1153 (9th Cir. 1997) ("failure to perform the express terms of the settlement

agreement is a breach").

### D.  Remedy for Kaiser's Breach

As remedy for Kaiser's breach of the Settlement Agreement, the

Court can order specific performance or an award of damages, as appropriate.  See

TNT Mktg., Inc. v. Agresti, 796 F.2d 276, 278 (9th Cir. 1986).  In its Motion,

Liberty only asked for an order of enforcing the terms of the Settlement Agreement

as entered into the record.  See ECF No. 237-1 at 9.  However, in its Reply, Liberty

also asks the Court to (1) order Kaiser to provide an accounting of any

recoupments it took after November 14, 2019; (2) order Kaiser to pay back to

Liberty any such recoupments; (3) retain jurisdiction over the enforcement of the

settlement agreement; and (4) order Kaiser to pay Liberty's attorneys' fees

associated with bringing the Motion to Enforce.

Kaiser argues that the new relief requested in the Reply must be

disregarded.  Although the Local Rules provides that new arguments raised in

Reply shall be disregarded, that Rule is intended to avoid ***prejudice*** to the

responding party.  To address any issues of prejudice, the Court specifically

allowed Kaiser to file a sur-reply (with no page limit) to address any new

arguments.  See ECF No. 255.  Because both parties have had a full opportunity to

address all arguments, it is appropriate for the Court to address all of the relief

requested by Liberty.  Even putting aside the fact that the relief was requested in

Liberty's reply, the Court is not limited in its powers to fashion the appropriate

relief and award the necessary remedy ***regardless*** of the parties' arguments.

### 1. Accounting of Recoupments

As detailed above, the Court finds that Kaiser breached the Settlement Agreement by claiming overpayments on reimbursements that were paid to Liberty before the date of settlement. Based on this finding, the Court recommends that the district court order Kaiser to provide to Liberty an accounting of the recoupments or offsets that Kaiser took after the date of settlement, November 14, 2019, for any reimbursements that were paid before November 14, 2019.

### 2. Payback of Recoupments

For the same reasons stated above, the Court has the authority to award damages for Kaiser's breach of the Settlement Agreement. The Court recommends that the district court order Kaiser to pay to Liberty all amounts reflected in the accounting of the recoupments or offsets that Kaiser took after November 14, 2019 for any reimbursements that were paid before November 14, 2019.

### 3. Retaining Jurisdiction

Kaiser objects to the Court retaining jurisdiction over enforcement of the Settlement Agreement after this action is dismissed. See ECF No. 244 at 11-12, 27-30. As noted above, the Settlement Agreement provides that the parties will stipulate to dismissal of this action. The parties' Settlement Agreement does not contain a provision for the Court to retain jurisdiction over enforcement of the

settlement *after* dismissal.  Stipulations for dismissal are only allowed under Rule

41(a)(1)(A)(ii), which allow a stipulation for dismissal signed by all parties.  See

Fed. R. Civ. P. 41.  As recognized by the Supreme Court, retaining jurisdiction

over settlement agreements after dismissal "is in no way essential to the conduct of

federal-court business."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S.

375, 381 (1994).  The Court can only retain jurisdiction over the settlement in

cases dismissed by stipulation under Rule 41(a)(1) "if the parties agree."  See id. at

382.  Here, Kaiser does not agree and the Settlement Agreement does not reflect

any agreement.  Accordingly, the Court recommends that the district court deny

Liberty's request to retain jurisdiction.

### 4.  Attorney's fees

As stated above, the Court has the power to award damages for failure

to comply with the Settlement Agreement.  See TNT Mktg., Inc., 796 F.2d at 278.

Kaiser's breach of the Settlement Agreement resulted in Liberty having to file its

Motion to Enforce.  Other courts in this district have awarded fees as part of the

damages awarded in enforcing settlement agreements.  See, e.g., Onewest Bank,

FSB v. Farrar, 2013 WL 6175321, at *11 (D. Haw. Nov. 19, 2013).  While fees

may be awarded as damages for the breach, the Court finds that such an award is

not appropriate here.  The parties have been engaged in contentious litigation for

nearly three years.  Liberty did not request attorneys' fees until its Reply, which

resulted in additional briefing for both parties.  Based on these considerations and

and the other issues discussed herein, the Court recommends that the district court

deny Liberty's request for an award attorneys' fees.

CONCLUSION

As discussed above, the Court FINDS AND RECOMMENDS that the

district court GRANT IN PART AND DENY IN PART Plaintiff Liberty Dialysis

– Hawaii, LLC's Motion to Enforce Settlement on the Record as follows:

1.  FIND that the parties entered into a valid on enforceable

agreement, that the release provision of the agreement is plain and unambiguous,

and that Kaiser breached the terms of the agreement;

2.  ORDER that the settlement terms stated on the record on

November 15, 2019 be enforced;

3.  ORDER Kaiser to provide Liberty with an accounting of the

recoupments or offsets that Kaiser took after November 14, 2019 for any

reimbursements that were paid before November 14, 2019 within seven days after

the district court acts on this Findings and Recommendation;

4.  ORDER Kaiser to pay Liberty all amounts reflected in the

accounting of the recoupments or offsets that Kaiser took after November 14, 2019

for any reimbursements that were paid before November 14, 2019 within ten days

24

after the district court acts on this Findings and Recommendation;

     5.  DENY Liberty's request to award attorneys' fees;

     6.  ORDER Kaiser to fulfill its obligations under the terms of the

agreement within ten days after the district court acts on this Findings and

Recommendation;

     7.  ORDER the parties to submit a stipulation for dismissal within

fifteen days after the district court acts on this Findings and Recommendation; and

     8.  DENY Liberty's request for the court to retain jurisdiction over the

settlement after dismissal.

     IT IS SO ORDERED.

     DATED AT HONOLULU, HAWAII, FEBRUARY 28, 2020.



                 Wes Reber Porter
                 United States Magistrate Judge

**LIBERTY DIALYSIS – HAWAII LLC v. KAISER FOUNDATION HEALTH
PLAN, INC. ET AL.; CIVIL NO. 17-00318 JMS-WRP; FINDINGS AND
RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF
LIBERTY DIALYSIS – HAWAII LLC'S MOTION TO ENFORCE
SETTLEMENT ON THE RECORD**