IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIBERTY DIALYSIS-HAWAII LLC, | CIV. NO. 17-00318 JMS-WRP |
| Plaintiff, | ORDER ADOPTING WITH MODIFICATIONS MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION, ECF NO. 266 |
| vs. | |
| KAISER FOUNDATION HEALTH PLAN, INC., and KAISER FOUNDATION HOSPITALS, | |
| Defendants. | |

**ORDER ADOPTING WITH MODIFICATIONS MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION, ECF NO. 266**

## I. INTRODUCTION

Before the court is Magistrate Judge Wes R. Porter's February 28, 2020 Findings and Recommendation ("F&R") to grant in part and deny in part Plaintiff Liberty Dialysis-Hawaii LLC's ("Liberty") motion to enforce settlement. ECF No. 266. Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively referred to in the singular as "Kaiser") objects. *See* ECF No. 267. For the reasons stated below, the court OVERRULES Kaiser's objections and ADOPTS as modified the F&R.

## II. <u>BACKGROUND</u>

### A.     The Underlying Matter

This has been a long and contentious case involving disputes over payments for medical services.  Liberty and Kaiser entered into the underlying Letter of Agreement ("LOA") for Liberty to provide outpatient renal dialysis and related services to Kaiser's patients.  *See* ECF No. 73 at PageID #1111.  The LOA covers the services and reimbursements to be provided, and also incorporates various rates along with a description of services.  *Id*. at PageID #1111-12.

Liberty's Complaint alleges that Kaiser was underpaying pursuant to the LOA or ceased payments altogether, ECF No. 1-2 at PageID #22-23, and that Kaiser was "unilaterally" seeking to recoup money it believed it was owed by reducing its payments to Liberty, *id.* at PageID #24-25.  Liberty asserted claims of breach of contract, accounting, and declaratory judgment.  *Id.* at PageID #29-31. The litigation centered on a claim that Liberty was not paid in full for "Epogen and Other Covered Services."  *See* ECF No. 268 at Page ID#4950.

///

///

///

///

2

**B.      The Settlement Agreement and Liberty's Motion to Enforce**

**1.      The Terms of the Settlement Agreement**

On November 15, 2019, counsel read the terms of a full settlement

between the parties into the record ("Settlement Agreement").  *See* ECF No. 229.

The relevant terms from the Settlement Agreement are as follows:

> [The S]ettlement shall constitute a full and mutual release
> of all claims up to the date of the settlement, which again
> was yesterday, November 14th, 2019.
> . . .
>
> The parties will continue to process and adjudicate
> reimbursements in good faith pursuant to the ordinary
> course of business.  For claims and services provided
> from November 1st, 2019 forward, the parties agree to
> the following: [listing certain agreements for this time
> frame].

ECF No. 234 at PageID #4309; ECF No. 235 at PageID #4318 (sealed).[1]

Judge Porter found that the parties had entered into a valid and

enforceable settlement, and set a date of January 10, 2020 for the parties'

stipulation for dismissal.  ECF No. 234 at PageID #4313.  On December 27, 2019,

Judge Porter informed the parties that if they "are unable to submit the appropriate

---

[1]  Although part of the Settlement Agreement was sealed, the parties now appear to agree that the quoted sealed language need not be redacted.  *See* Kaiser's Objection, ECF No. 267 at PageID #4896 (providing the exact language in unsealed filing); *see also* F&R, ECF No. 266 at PageID #4863, n. 2 (noting that the quoted language "does not contain any monetary terms or any financial information regarding the parties' ongoing business relationship and should be public for purposes of the discussion about enforcing settlement and in future filings").

dismissal documents to the district judge by January 10, 2020 . . . they shall file the necessary motion to enforce the settlement."  ECF No. 236.

### 2.    The Disputed Interpretations of the Settlement Agreement

On December 28, 2019, Liberty filed its motion to enforce the Settlement Agreement.  ECF No. 237.  Kaiser filed an opposition, ECF No. 244, and Liberty filed a reply.  ECF No. 252.  Kaiser then moved to strike portions of Liberty's reply, arguing that it contained new arguments and evidence.  *See* ECF No. 254.  On February 10, 2020, Judge Porter denied Kaiser's motion to strike, but allowed Kaiser to file a sur-reply, "[t]o the extent Defendants wish to address new evidence and arguments raised in Plaintiff's Reply."  ECF No. 255.  Kaiser filed its sur-reply on February 14, 2020.  ECF No. 258.

Essentially, the parties did not (and still do not) dispute that there is a valid and enforceable Settlement Agreement.  *See* Kaiser's Objections, ECF No. 267 at PageID #4891 ("Both parties agree they reached an enforceable settlement agreement in November 2019.").  Rather, the parties dispute the scope of the mutual release of claims.  Kaiser's position was (and is now) that the Settlement Agreement released a specific category of medical bills—that is, billing related to "Epogen and other drugs" but otherwise did not release any claims as to other medical billing recoupment; Kaiser argues this is evidenced by Kaiser's and

Liberty's course of dealing, pursuant to Hawaii's Prompt Pay Statute, Hawaii Revised Statute ("HRS") § 431:13-108,[2] before and throughout the litigation. *See e.g.,* ECF No. 267. at PageID #4894-95; *see also* Shapiro Decl. ¶ 10, ECF No. 267-3 at PageID #4934 ("Pursuant to this ordinary course of dealing [under the Prompt Pay Statute], Kaiser and Liberty continued to process and adjudicate non-pricing related recoupments—such as recoupments for duplicate billing, coordination of benefit issues, and member eligibility issues—during the litigation including up to the date of the settlement agreement.").

Meanwhile, Liberty argued (and continues to argue) that the Settlement Agreement released *all* legal claims related to all medical overpayments, including the "non-pricing related" overpayment requests Kaiser is now arguing are exempt from the Settlement Agreement. *See* ECF No. 268 at PageID #4953-54 ("Any claims of overpayment Kaiser had as of November 14, 2019 . . . were mutually released.  Thus, for any dates of service for which Kaiser *had paid Liberty's medical bill* . . . on or before November 14, 2019, *both parties*' legal claims arising from that payment were released.").

---

[2] According to Kaiser, pursuant to the Prompt Pay Statute, Kaiser is to make payments within 30 days of the service, but Kaiser then has 18 months to review its payments or identify any other billing error. *See* HRS § 431:13-108.

### 3.    Terminology for Clarification Purposes

#### a.    *Legal Claims v. Medical Bills*

Throughout this litigation, the parties often use the term "claims" interchangeably to mean either a legal claim or a medical billing claim.  To avoid any confusion, throughout this order, the court uses "claims" to mean legal claims or litigation claims.  Any medical billing claims shall be referred specifically as "overpayments," "reimbursements," or "recoupments."

#### b.    *Epogen/OCS-Related Overpayments v. Non-Epogen/OCS-Related Overpayments*

Further, the parties and the court have used different phrases and terminology to describe the various types of reimbursements or recoupments in dispute.  Essentially, and as described above, the parties dispute whether two "categories" of claims have been released (Liberty alleges both categories are released, and Kaiser alleges only the first category is released).  But what constitutes the "categories" themselves does not appear to be disputed.

The first "category" includes medical overpayments and billing related to "Epogen and Other Covered Services," (i.e., the legal claims of medical payments raised in the Complaint).  *See* Summary Judgment Order, ECF No. 73 at PageID #1115 (describing the claim as to Epogen and "'Other Covered Services'") (quoting Liberty's Complaint).  Kaiser describes it as "Epogen and other drugs

6

[that] were separately reimbursable," ECF No. 267 at PageID #4893-94 (referring

to the dispute as centering on Epogen and two other drugs, Venofer and Hecterol).

And Liberty primarily describes it as "failure to pay . . . Epogen and Other

Covered Services."  ECF No. 268 at PageID #4950.

The second "category" includes medical overpayments Kaiser seeks

by way of reimbursement that are not in the first "category," including "duplicate

reimbursement[s]," reimbursements "to Kaiser that should have been submitted to

another payor (such as Medicare)," or reimbursements "for patients who are not

Kaiser members or who have other coverage-related issues."  Shapiro Decl. ¶ 7,

ECF No. 267-3 at PageID #4932; *see also id.* ¶ 10, ECF No. 267-3 at PageID

#4934 (describing these as "recoupments for duplicate billing, coordination of

benefit issues, and member eligibility issues").  Kaiser has referred to this second

category as "non-pricing related overpayment claims."  *See, e.g.*, ECF No. 267 at

PageID #4895.  Liberty does not clearly delineate or segregate out this second

category (as Liberty maintains that both "categories" were released and refers

throughout its brief as one unit), but generally refers to this second category as

Kaiser's attempt to "carve out" a certain type of medical overpayments as not

released.  *See* ECF No. 268 at PageID #4958-50 (discussing that Kaiser is seeking

a carve-out for "non-pricing related issues such as coordination of benefits, eligibility, and duplicate billing") (quoting Kaiser's brief).

Thus, the court will refer to the first "category" as "Epogen/OCS-related overpayments" and refer to the second "category" as "non-Epogen/OCS-related overpayments."  Throughout this Order, the court will use these two phrases, even though the parties and the F&R often use different terminology.

## C.     The F&R

The F&R recommended that this court grant in part and deny in part Liberty's motion to enforce the Settlement Agreement.  *See* ECF No. 266. Specifically, it found that the Settlement Agreement's release provision was clear and unambiguous, and that a "full and mutual release of all claims" included both known and unknown claims.  *See* F&R, ECF No. 266 at PageID #4869-70.  The F&R further concluded that even if the mutual release was limited to "litigation claims" (and not all claims, known and unknown), the release would still apply to all claims for recoupments.  That is, the F&R concluded that the release applied to all claims as to payments or money owed between the parties (i.e., both Epogen/OCS-related and non-Epogen/OCS-related overpayments), and not merely a narrow set of payment disputes, because "Kaiser has asserted its ability to recover overpayments from Liberty ***throughout*** this litigation" and "has always

8

maintained [that] any damages calculation must also address overpayments that

Kaiser made and did not recoup." *Id.* at PageID #4871 (quoting ECF No. 204)

(emphasis and second bracket in original); *see also id.* at PageID #4870-73.

      The F&R further found that Kaiser breached the Settlement

Agreement when it "[sought] to recoup or offset purported overpayments made

before the date of settlement." *Id.* at PageID #4879.

      Based on these findings, the F&R issued the following four

recommendations:

1. That "the district court order Kaiser to provide to Liberty an accounting of the recoupments or offsets that Kaiser took after the date of settlement, November 14, 2019, for any reimbursements that were paid before November 14, 2019";

2. That "the district court order Kaiser to pay to Liberty all amounts reflected in the accounting of the recoupments or offsets that Kaiser took after November 14, 2019 for any reimbursements that were paid before November 14, 2019";

3. That "the district court deny Liberty's request to retain jurisdiction"; and,

4. That "the district court deny Liberty's request for an award of attorneys' fees."

*Id.* at PageID #4881-83.

      On March 13, 2020, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule

74.1, Kaiser objected to the F&R.  ECF No. 267.  Liberty filed its response on

March 27, 2020.  ECF No. 268.  The court finds this matter suitable for disposition

without a hearing pursuant to Local Rule 7.1(c).

### III.  <u>STANDARD OF REVIEW</u>

When a party objects to a magistrate judge's findings or

recommendations, the district court must review de novo those portions to which

the objections are made and "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge."  28 U.S.C.

§ 636(b)(1); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en

banc) ("[T]he district judge must review the magistrate judge's findings and

recommendations de novo if objection is made, but not otherwise.").  Under a de

novo standard, there is no deference to the lower court's ruling; rather, the court

"freely consider[s] the matter anew, as if no decision had been rendered below."

*Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009) (alteration in original);

*Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

The district court "may accept, reject, or modify, in whole or in part,

the findings and recommendations made by the magistrate judge," or recommit the

matter to the magistrate judge with further instructions.  28 U.S.C. § 636(b)(1);

*United States v. Raddatz*, 447 U.S. 667, 673-74 (1980); Fed. R. Civ. P. 72(b)(3).

# IV. <u>DISCUSSION</u>

## A.   Legal Standard Governing Enforcement of Settlement Agreements

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).  Ordinarily, the "construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (internal quotations omitted).  Hawaii contract law principles therefore apply.  *Boskoff v. Yano*, 217 F. Supp. 2d 1077, 1085 (D. Haw. 2001).

"Under Hawaii law, '[w]here the evidence in the record shows that all the essential elements of a contract are present, a compromise agreement among the parties in litigation may be approved by the court and cannot be set aside except on grounds that would justify rescission.'" *Edwards v. Trade Pub. Ltd.*, 2013 WL 1296277, at *3 (D. Haw. Mar. 27, 2013) (quoting *Miller v. Manuel*, 9 Haw. App. 56, 63, 828 P.2d 286, 291 (1991)).  According to Hawaii law, absent "bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." *Id.* (quoting *Miller*, 9 Haw. App. at 63, 828 P.2d at 291) (internal quotations omitted).

11

## B.     Kaiser's Objections

Kaiser asserts three main objections to the F&R: (1) the release language of the parties' Settlement Agreement did not release unknown claims, *see* ECF No. 267 at PageID #4901-04; (2) certain extrinsic evidence offered by Kaiser addressing the parties' course of dealing and course of conduct was "ignored," *id.* at PageID #4904-12; and (3) Kaiser was entitled to an evidentiary hearing on the matter, *id.* at PageID #4914.  Kaiser also raises two "other objections" "to preserve appellate review."  *Id.* at PageID #4914-15.  The court addresses each of these objections in turn, and as discussed below, OVERRULES all these objections and ADOPTS as modified the F&R.

### 1.     The Settlement Agreement's Release Language

Kaiser argues that the F&R is erroneous because the Settlement Agreement only released known (as opposed to unknown) claims.  Ultimately, the court need not address this specific objection because the court agrees with the F&R's secondary conclusion that the requests for recoupment of purported non-Epogen/OCS-related overpayments were a *known* litigation claim that Kaiser agreed to release.  Thus, whether the release applied to unknown claims is simply not relevant.

Kaiser now argues that what it seeks to do—recoup payments made to Liberty which were dated prior to the Settlement Agreement and as far back as 2012—was not a breach of the Agreement because the parties never intended to release Kaiser's recoupment rights for non-Epogen/OCS-related overpayments, including "duplicate billing, coordination of benefit issues, and member eligibility issues." *See* Shapiro Decl.¶ 10, ECF No. 267-3 at PageID #4934.  Further, Kaiser argues that its actions are consistent with the Hawaii Prompt Pay Statute.

The F&R found that that the Settlement Agreement's "full and mutual release of all claims" prior to November 14, 2019 (the date the Agreement was entered into) released *any* and all claims of overpayments, even those outside of Liberty's claim of Epogen/OCS-related overpayments because Kaiser has maintained throughout the course of this litigation that "any damages calculation must also address overpayments that Kaiser made and did not recoup."  ECF No. 266 at PageID #4870-71 (quoting Kaiser's filing).  And thus, the F&R concluded that "Kaiser's argument that [non-Epogen/OCS-related] overpayments were not 'litigation claims' is disproved by the record in this lawsuit and, had this case not settled, Kaiser [] would have made [these] overpayment arguments as part of the damages calculation at trial." *Id.* at PageID #4872.

13

Upon de novo review, the court agrees.  First, the release provision contains no specific carve-out or claim-splitting provision despite Kaiser's assertion that its intention to retain non-Epogen/OCS-related overpayments was consistent with the parties' course of dealing throughout the litigation; instead, the release provision uses broad release language, contains no carve-outs, and makes no reference to HRS § 431:13-108.

Second, the Complaint itself claims that Kaiser engaged in self-help recoupment of payments related and unrelated to Epogen.  *See* ECF No. 1-2 at PageID #24.

Even more critical, Kaiser maintained throughout the litigation that any damages calculation must take into account a broad range of past overpayments.  In fact, in response to the court's July 18, 2019 inquiry regarding the issues remaining for trial, Kaiser explained:

> In addition, as *Kaiser has always maintained*, any damages calculation must also address overpayments that Kaiser made and did not recoup.  Liberty has sent Kaiser several letters demanding that Kaiser not take recoupment on its overpayments to Liberty.  Although Kaiser has recouped in some situations where Liberty submitted and Kaiser paid on *duplicate invoices*, *or where Kaiser paid invoices that should have been sent to Medicare,* Kaiser believes that Liberty is retaining overpayments that Kaiser made since December 23, 2010.  In fact, even the limited, heavily culled data excerpts that Liberty

14

> produced in this case demonstrates that Liberty tracks and quantifies how Kaiser overpaid on some of Liberty's claims.

Kaiser's Response to Plaintiff's Statement of Remaining Issues, ECF No. 204 at PageID #3766 (emphasis added).  Thus, Kaiser itself affirmatively stated that it "always maintained" that duplicate billing and other overpayments should have been part of any damage calculation.

Further, during a June 21, 2019 hearing on various discovery-related matters, the discussion between Judge Porter and the parties made clear that the overpayment or recoupment issue was not limited to Epogen/OCS-related overpayments and billing.  When the court asked Kaiser's counsel if Kaiser sought discovery for "recoupment as it relates to issues . . . that [are] unrelated to the rates and payment of rates," counsel for Kaiser responded "yes, I think that would be included in what Your Honor just mentioned."  ECF No. 187 at PageID #3413-14.  Finally, Judge Porter stated that, in his view, the damages calculation could include an offset of "some incidents of overpayment or recoupment that are unrelated [to the Epogen/OCS-related overpayments]."  *Id*. at 3414.  Stated differently, the court agreed with Kaiser that non-Epogen/OCS-related payments were relevant to any ultimate damages calculation.  And, in a written order addressing these discovery disputes, Judge Porter found that

> Liberty is entitled to discover information and documents about Kaiser's self-help efforts in 'recoupment.' Liberty alleges that, at some point during the relationship on or about 2011, Kaiser offset or held back payments due to Liberty on [reimbursements], related and *unrelated to Epogen and OCS*, to 'recoup' money from past claims that Kaiser reimbursed according to [the LOA] rates.

ECF No. 182 at PageID #3085 (emphasis added).

Accordingly, although non-Epogen/OCS-related overpayments (i.e., the second category) were not formally raised as a legal claim by Liberty, Kaiser itself injected these other requests for overpayments into the litigation as an aspect of any damages calculation. As such, they became part of both "litigation-related" and "known" claims that Kaiser released.

Viewed together, Kaiser released all legal claims related to medical over- and under-payments—both Epogen/OCS-related and non-Epogen/OCS-related overpayments. And Kaiser utterly fails to explain why it did not explicitly exempt those overpayments from the broad general release language in the Settlement Agreement, despite consistently raising these rights for overpayments throughout the course of this litigation. Thus, based on the history of the litigation and the plain and ordinary language of the Settlement Agreement, the court concludes that Kaiser released its *known* claims as to *all* under-or-overpayments made, not merely Epogen/OCS-related overpayments. *See State Farm Fire & Cas.*

16

*Co. v. Pac. Rent-All, Inc.*, 90 Haw. 315, 324, 978 P.2d 753, 762 (1999) ("[C]ontractual terms should be interpreted according to their plain, ordinary meaning and accepted use in common speech.  The court should look no further than the four corners of the document to determine whether an ambiguity exists.  Consequently, the parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous.") (citations omitted).

> 2.    **The Settlement Agreement's Provision to Continue Processing and Adjudicating Reimbursements was not Ambiguous, and External Evidence Did Not Need to be Considered**

The F&R also addressed a different provision of the Settlement Agreement—an agreement that the parties will "continue to process and adjudicate reimbursements in good faith pursuant to the ordinary course of business" (i.e., the "reimbursement provision").  ECF No. 235 at PageID #4319.

Kaiser argued before Judge Porter that it could not have breached the Settlement Agreement because its actions were consistent with the reimbursement provision and HRS § 431:13-108.  ECF No. 266 at PageID #4874.  Liberty, on the other hand, argued that Kaiser *did* breach the Settlement Agreement because this provision applied solely to an ongoing business relationship, and that only services from November 1, 2019 forward were to be determined pursuant to the parties' ordinary course of business, including and consistent with HRS § 431:13-108.  *See*

17

ECF 268 at PageID #4957 ("These new adjudication guidelines going forward applied only to Liberty's bills for *Dates of service after November 1, 2019* (two weeks prior to the date through which all legal claims were released).").[3]

The F&R determined that the reimbursement provision was ambiguous.  Then, relying on extrinsic evidence, the F&R agreed with Liberty's interpretation that it only applied to reimbursements for services that had been rendered as of November 1, 2019 but were not yet billed.  F&R, ECF No. 266 at PageID #4874-79.

Upon de novo review, and given its finding above, the court disagrees that this provision is ambiguous, and thus there is no need to rely on extrinsic evidence.

As set forth above, Kaiser sought as part of any damages calculation to offset both Epogen/OCS-related and non-Epogen/OCS-related overpayments. Kaiser thus released *all* claims related to medical over- and under-payments prior to November 14, 2019.  And because Kaiser clearly released these litigation claims, Kaiser cannot create an ambiguity where none exists.  *See* 11 Williston on

---

[3] As Liberty clarified, the November 1, 2019 date was selected because "[n]one of Liberty's bills for services rendered in those two weeks would have been paid prior to November 14 (such that legal claims arising from that payment would have arisen)."  ECF No. 268 at PageID #4957, n.6. (noting that "under the LOA, Liberty had 90 days from the date of service to submit bills to Kaiser, and Kaiser had 30 days to pay them.").

Contracts § 32:5 (4th ed. May 2020 Update) ("A contract will be read as a whole and every part will be read with reference to the whole.  If possible, the contract will be so interpreted as to give effect to its general purpose as revealed within its four corners or in its entirety.").  In other words, the court determines that Kaiser released all litigation claims, and the litigation claims clearly included Kaiser's position that it could offset any damages with prior non-Epogen/OCS-related overpayments.  The remainder of the Settlement Agreement must be read in light of this release.  The reimbursement clause, then, cannot be read to include the very matters released in the Settlement Agreement.  *See, e,g.*, *id.* § 32:10 ("[T]he meaning which arises from a particular, even more specific clause cannot control the contract when that meaning defeats the agreement's overall scheme or purpose.").  Accordingly, the court need not consider extrinsic evidence.  *See Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Haw. 36, 45, 305 P.3d 452, 461 (2013) ("The parol evidence rule 'precludes the use of extrinsic evidence to vary or contradict the terms of an unambiguous and integrated contract.'") (quoting *Pancakes of Haw. v. Pomare Props. Corp.*,85 Haw. 300, 310, 944 P.2d 97, 107 (Haw. Ct. App. 1997)).[4]

---

[4]  If the court did consider extrinsic evidence, it would affirm the F&R's ultimate conclusion—Liberty's interpretation was the correct and only reasonable interpretation of the reimbursement provision.

### 3.    Kaiser Was Not Entitled to an Evidentiary Hearing

Judge Porter vacated the hearing pursuant to Local Rule 7.1(c) after informing parties of his inclination at a status conference.  Kaiser now objects, arguing that it did not have the opportunity to object to having the hearing vacated, and further argues that because there are factual disputes, an evidentiary hearing was required.  The court disagrees.

"[T]he district court may enforce only *complete* settlement agreements.  Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."  *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (internal citations omitted).  However, an evidentiary hearing is not needed when "the terms were placed on the record and agreed to by all parties in open court."  *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1134 (9th Cir. 2002).

Here, it is undisputed that there is a valid and enforceable settlement agreement that was entered into the record in open court.  *See* ECF No. 266 at PageID #4863 ("When the settlement was placed on the record, this Court found that the parties had entered into a valid and enforceable settlement."); *see also* ECF No. 267 (Kaiser's Objections) at PageID #4897 (noting the same); *see also* ECF No. 268 (Liberty's response) at PageID #4946 ("[B]oth Liberty and Kaiser agreed,

and the Court found, that a valid and enforceable settlement agreement was reached on November 14, 2019.").  Thus, the Ninth Circuit has been clear on this point—"there was no need for an evidentiary hearing on whether an agreement existed, or what its terms were."  *Doi*, 276 F.3d at 1139.

To the extent Kaiser now argues there were any factual disputes as to *how* the terms should be executed, this also fails for the reasons discussed above—that is, the Settlement Agreement is unambiguous and subject to only one *reasonable* interpretation—Liberty's interpretation.  Judge Porter did not err in vacating the evidentiary hearing—a hearing which was not required in the first instance.[5]

///

///

---

[5] Kaiser quibbles over Judge Porter's characterization of the parties' non-objections as "waivers" of its right to any evidentiary hearing (which it was not entitled to have in the first place).  First, Judge Porter never characterized the lack of objections as "waivers."  *See* F&R Order, ECF No. 266 at PageID #4861 (noting that the parties "agreed that an evidentiary hearing was not necessary").  In any event, Kaiser is incorrect.  Despite Kaiser's assertion that it did not waive its rights to an evidentiary hearing, the evidence presented, including Kaiser's own declarations, show that Judge Porter, during a February 25, 2020 telephonic status conference, advised the parties he intended to vacate the hearing because it was unnecessary, but would reset the hearing if needed.  *See* Hoftiezer Decl. ¶¶ 16-17, ECF No. 267-1 at PageID #4921-22 (declaring that he recalled Judge Porter taking the evidentiary hearing off calendar and rescheduling as needed, but states he had no intention of waiving "any right to an evidentiary hearing"); Cosgrove Decl. ¶ 12, ECF No. 267-2 at PageID #4926 (same).  Kaiser failed to object, state its opposition, or assert that it may have a purported right to an evidentiary hearing at that time.  Judge Porter reasonably inferred that the parties agreed, given the lack of any objection.

**4.    Additional Objections**

Kaiser also asserted two additional objections, which it claims were for purposes of preserving objections for appellate review only.  *See* ECF No. 267 at PageID #4914-16.  These additional objections also fail.

First, Kaiser argues that the F&R's finding of a breach by Kaiser was premature because Liberty "refused to dismiss the present litigation and, in so doing, failed to perform its obligations under the Settlement Agreement," *id.* at PageID #4915.  Kaiser's argument fails.  Kaiser cites to a Bankruptcy Court decision in the District of Oregon (citing to an Oregon Supreme Court case) for the contract principle that: "[o]rdinarily, of course, a party to a contract who complains that the other party has breached the terms of a contract must prove performance of the contract on his own part, or a valid tender of performance rejected by the other party." *In re Faszer Bros. & Sons, Inc.*, 34 B.R. 442, 444 (Bankr. D. Or. Sept. 1983) (citing *Huszar v. Certified Realty Co.*, 266 Or. 614, 620, 512 P.2d 982, 984 (1973)).

Here, Liberty's obligation to dismiss the matter was conditioned on Kaiser meeting its obligation first.  *See* ECF No. 235 at PageID #4318 (noting Kaiser's obligation "in exchange for" dismissal) (sealed).  Liberty has not failed to

22

perform because there is no evidence that the condition (to be performed by

Kaiser) requiring Liberty to perform (dismissing the suit) has been met.  In short,

Liberty did not breach first and Kaiser is thus not excused from its own breach of

seeking recoupment.  *See Pac. Commercial Servs. LLC v. LVI Envtl. Servs., Inc.*,

2018 WL 3826773, at *28 (D. Haw. Aug. 10, 2018) ("A party who *first commits* a

material breach cannot enforce the contract." (quoting 23 Williston on Contracts

§ 63:3 (4th ed. 2011)) (emphasis added).

Second, Kaiser argues the F&R erred in granting Liberty the relief it

raised in its reply.  *See* ECF No. 267 at PageID #4915.  The court disagrees.

Liberty's requested relief for an accounting was not beyond the scope of the

motion and thus not inappropriately raised in the first instance in its reply.

Liberty's request in its reply—that Kaiser provide an accounting for recoupments

"effectuated after November 14, 2019 and . . . re-pay Liberty the amounts Kaiser

recouped as damages for its breach," ECF No. 252 at PageID #4670—was clearly

within the scope of Liberty's motion to enforce settlement.  That is, Kaiser was

violating the Settlement Agreement by seeking non-Epogen/OCS-related

overpayments it had released.  In order for the court to rectify this violation raised

by Liberty (that Kaiser is recouping and recouped medical payments it had

released), the court (and Liberty) *needed* an accounting to determine which recoupment payments had been improperly collected.

Moreover, Kaiser was not prejudiced by this relief.  Judge Porter, out of an abundance of caution and to avoid any prejudice, allowed Kaiser to file a sur-reply with no page limits to respond to the relief sought by Liberty in its reply.  *See* ECF No. 266 at PageID #4880-81.  Kaiser now argues that it was only given two days to respond.  However, Liberty filed its reply on February 4, 2020.  *See* ECF No. 253.  On February 10, 2020, Judge Porter allowed Kaiser to file a sur-reply by February 14, 2020.  ECF No. 255.  Accordingly, Kaiser was on notice and aware of the arguments made by Liberty as early as February 4, 2020, when Liberty's reply was filed, and, in any event, had at least four calendar days from Judge Porter's order to provide a substantive response.  In total, Kaiser had 14 days notice as to any purportedly new arguments raised by Liberty (which, again, the court does not find).  Kaiser's assertion that it had only two days is disingenuous and a red herring.  Judge Porter did not err.

///

///

///

///

24

# V.  **CONCLUSION**

For the foregoing reasons, the court modifies Judge Porter's findings,

as discussed above, and ADOPTS his recommendations and ORDERS the

following:

1. That "Kaiser . . . provide to Liberty an accounting of the recoupments or offsets that Kaiser took after the date of settlement, November 14, 2019, for any reimbursements that were paid before November 14, 2019";

2. That "Kaiser . . . pay to Liberty all amounts reflected in the accounting of the recoupments or offsets that Kaiser took after November 14, 2019 for any reimbursements that were paid before November 14, 2019";

3. That "Liberty's request to retain jurisdiction" is denied; and,

4. That "Liberty's request for an award of attorneys' fees" is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 30, 2020.



   /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Liberty Dialysis – Haw. LLC v. Kaiser Found. Health Plan, Inc. & Kaiser Found. Hosps.*, Civ. No. 17-00318 JMS-WRP, Order Adopting as Modified Magistrate Judge's Findings and Recommendation, ECF No. 266.